THE STATE v. PAINTER, *Appellant.*

1. **Assault to kill**: SUFFICIENCY OF INDICTMENT. An indictment for an assault with intent to kill, drawn under the 29th section of article 2, chapter 42, Wag. Stat., p. 449, which alleges that the assault was made with an axe and a gun, and that they were deadly weapons, is sufficient, without the further allegation that they were "likely to produce death."

2. —— There was evidence on the part of the State tending to prove that the defendant and one Andrews were in a blacksmith shop, that defendant went home, a short distance from the shop, and soon returned with a gun lying across his right arm, his left hand being on the cock of the gun, with the muzzle pointed towards the feet of Andrews, and said: "Bill Andrews, I am going to kill you, d—n your old soul;" that the gun was seized by a bystander, and the muzzle forced to the ground after it had been elevated by defendant, so that it was pointed towards Andrews' body, as high as his hips; *Held*, that such facts, if proven, would constitute an assault with intent to kill.

3. **Intent** is an essential element of crime. An instruction, therefore, which declared that, when a crime is committed, the law presumes the intent; *Held*, to be absurd and meaningless.

4. **Presumption of Intent**: EVIDENCE. The fact that one armed with a deadly weapon failed to shoot and kill another, when he had an opportunity, does not give rise to a presumption of law that he did not intend to do so. It is a circumstance to be considered by the jury in determining whether there was an assault or not.

5. **Intent to Assault.** Neither a purpose to make an assault, nor any amount of preparation for doing so, unless followed by some hostile

demonstration, will constitute an assault; a bare intent to commit an offense is not punishable by our law.

*Appeal from Douglas Circuit Court.*—HON. J. R. WOODSIDE, Judge.

*F. S. Hefferman* for appellant.

*J. L. Smith*, Attorney General, for the State.

HENRY, J.—At the October term, 1875, of the circuit court of Douglas county, the defendant was indicted for an assault with intent to kill. The indictment alleged that "John Painter and Elisha Painter, both late of the county of Douglas, at and in the county of Douglas, on or about the first day of August, 1875, feloniously, willfully, on purpose and of his malice aforethought, an assault did make upon one William Andrews, in the peace of the State then and there being with dangerous and deadly weapons to-wit: an axe and a gun being then and there deadly weapons in the hands of the said John Painter and Elisha Painter, then and there held, with the intent him, the said Andrews, then and there to kill and murder, contrary," &c. At the October term, 1877, of said court, there was a trial of the cause, and defendant was found guilty and sentenced to the penitentiary for a term of two years. Motions for a new trial and in arrest of judgment were overruled, and defendant has prosecuted an appeal to this court.

There is nothing in the objection to the indictment, that it does not allege that the offense was committed in

1. ASSAULT TO KILL: sufficiency of indictment. Douglas county. It is clearly and explicitly alleged that the assault was made in that county. The objections, that it does not allege that the assault was made with malice, that it does not charge, that the defendant made an assault with deadly weapons likely to produce death, and that it does not show that an assault was committed, are equally groundless. The in-

dictment was drawn on the 29th section, and the allegation that the axe and gun were deadly weapons, was sufficient without alleging that they were likely to produce death. That allegation is only necessary when other means than deadly weapons are employed in making the assault. The assault was specifically charged and alleged to have been made on purpose and of malice aforethought.

The evidence on the part of the State was to the effect that William Andrews, on the 25th day of August, 1875, went to the blacksmith shop of defendant's father in Douglas county; that defendant was in the shop mending a shoe, and as soon as he had finished that work he went home a short distance from the shop and soon returned with a gun, and remarked to Andrews: " Bill Andrews, I am going to kill you, d—n your old soul." The gun was then lying across his right arm, with the muzzle pointed towards Andrews' feet, the defendant's left hand being on the cock of the gun. His father immediately left the forge and caught hold of the gun, and forced the muzzle towards the ground; but this was after defendant had elevated the muzzle, so that the gun was pointed towards Andrews' body as high as his hips. The testimony for the defense was that of the defendant and his brother. The latter testified that defendant went to the house and returned with a gun, and said to Andrews: " Wm. Andrews, I heard you said my mother was a yellow-necked b—t—h, and that I was a horse thief; if you said so, we can settle it, if not, you can say so, and I have nothing against you." Andrews said, "I never said it." Defendant then said, " it is all right;" that defendant did not try to shoot Andrews, or say anything about shooting or killing him. Defendant's testimony was substantially the same, with the addition that he said he got the gun to make Andrews retract what he had said, and to prevent being hurt, if Andrews had weapons. We are satisfied that from this evidence the jury was warranted in finding an assault made by the defendant. The authorities cited by the Attorney

General are conclusive, that if the testimony for the State was credited by the jury, it proved an assault. *Bloomer v. State*, 3 Sneed (Tenn.) 66; *State v. Morgan*, 3 Iredell 186; *U. S. v. Myers*, 1 Cranch C. C. 310; *U. S. v. Richardson*, 5 Cranch C. C. 348; *Beach v. Hancock*, 7 Foster (N. H.) 223.

The court, for the State, gave the following instructions: The first was substantially, that if Painter assaulted Andrews with a gun, as charged in the indictment, on purpose and of malice aforethought, with intent to kill him, they should find him guilty. 2. The court instructs the jury that an assault with intent to kill may be made, although there is no striking or shooting. 3. The court instructs the jury that the fact that the defendant and prosecuting witness were on friendly terms immediately after the difficulty sworn to by the witnesses, and have remained so ever since, is no evidence of the innocence of the defendant, but if they believe from the evidence that, at the time the ⌊assault was made, the defendant intended to kill said Andrews, they should convict. 4. The court declares the law to be, that the intent of the defendant to kill Wm. Andrews must be gathered from the circumstances and opportunities of defendant to carry into execution such intent, and if the jury believe from the evidence that the defendant attempted to, and was prevented from carrying into execution his intent to kill said Andrews, then the jury should convict. 5. The court instructs the jury that if any witness manifested an interest in the premises, the jury should receive such testimony of the witness who appeared to manifest such interest with caution. 6. The court declares the law to be, that words, no matter how abusive in their nature, or no matter what the prosecuting witness may have said concerning the defendant or any member of his family, will not justify an assault. 8. The court declares the law to be that force is not necessary to prevent one man from assaulting another. 11. The court instructs the jury that when a

crime is committed, the law presumes the intent, and it devolves upon the person charged to show that the unlawful act was done by accident or otherwise.  12.  The court instructs the jury that force or words are not necessary to prevent a man from carrying into effect his intent to commit a crime, and if they believe from the evidence that, at the time defendant came to the shop with the gun, he intended to kill the said Andrews, they should convict.

To the giving of these instructions defendant objected, which objection being overruled, he excepted.  The 7th instruction was as to the credit the jury might give a witness who had willfully sworn falsely, &c., and was unexceptionable.  The 9th properly defined a reasonable doubt, and the tenth correctly told the jury what punishment they might inflict, if they found the defendant guilty.

The instructions for the State were substantially correct declarations of law.  The 11th, however, is unmean3. INTENT.     ing.  When proof of a crime is made, there is no necessity for any presumption of intent, for that is an essential element of crime, and crimes are not committed by accident.  We have particularly noticed this instruction, because trial courts so frequently commit blunders by multiplying instructions.  Why such an instruction was asked or given, we cannot conceive; but it could not have prejudiced the defendant, because it could not have benefitted the prosecution.  Nor could it have misled the jury, for it was no direction to them at all, but was simply absurd and meaningless.

For the defendant, the court gave four instructions, and refused the following asked by him:  That if at the 4. PRESUMPTION OF time of the alleged assault, defendant had INTENT: evidence an opportunity to shoot and kill Andrews, and did not do so, the presumption is that he did not intend to do so.  This instruction was properly refused, because there is no such presumption of law.  That he had an opportunity to shoot and kill, and did not, was a cir-

cumstance to be considered by the jury in determining whether there was an assault or not. The 6th asked by defendant and refused, was to the effect, that although defendant took the gun to the shop with intent to settle a difficulty with Andrews, still that fact, of itself, was not an assault unless there were demonstrations to shoot or strike with the gun. The 7th " that although defendant carried his gun to defend himself, in case a difficulty arose, that the fact was not, of itself, an assault."

Neither a purpose to make an assault, nor any amount of preparation for doing so, will constitute an assault, unless followed by some hostile demonstration against the person toward whom the purpose is entertained. If the defendant had gone and procured the gun for the express purpose of taking the life of Andrews, but, after coming up with Andrews, made no demonstration toward the accomplishment of that purpose, he would not have been guilty. A bare intent to commit an offense is not punishable by our law. In view of the evidence for the defense, these instructions should have been given. They were unquestionably correct declarations of law, and there was evidence to warrant the court in giving them. The judgment is therefore reversed and the cause remanded. All concur

REVERSED

