(*Superior Court of Cook County.*)

# People, ex rel. George Frank, Louis Stein and Robert C. Davis

## vs.

## James Pease, Sheriff.

(April 15, 1899.)

1. HABEAS CORPUS BASED ON UNCONSTITUTIONAL STATUTE—JURISDICTION OF CIRCUIT COURTS. The circuit courts have jurisdiction to determine the constitutionality of acts of the legislature in a habeas corpus proceeding.

2. HABEAS CORPUS—EFFECT OF DECISIONS OF THE SUPREME COURT AS TO THE JURISDICTION OF CIRCUIT COURTS. Upon a review of the decisions of the Supreme Court to the effect that constitutional questions are to be eliminated in habeas corpus proceedings *held* that they lay down a rule of practice for cases of applications for the writ of habeas corpus in the Supreme Court and not for cases in the circuit courts. *People v. Jonas*, 173 Ill. 316, *considered* and *distinguished*.

3. CONSTITUTIONAL LAW. ACT OF APRIL 9, 1875, PROHIBITING SALES OF RAILROAD TICKETS BY UNAUTHORIZED PERSONS IS UNCONSTITUTIONAL. The act of April 9, 1875, prohibiting sales of railroad tickets by unauthorized persons is unconstitutional and void, because it amounts to a deprivation of property without due process of law and is an unwarranted interference with trade and personal liberty and freedom of occupation. *People ex rel. Tyroler v. Warden*, 157 N. Y. 116, 51 N. E. 1006, *approved* and *followed*.

4. HABEAS CORPUS TO SECURE DISCHARGE OF RELATORS INDICTED UNDER AN UNCONSTITUTIONAL STATUTE. The relators were indicted for violation of the Act of April 9, 1875, entitled "An act to prevent frauds upon travelers and owner or owners of any railroad, steamboat, or other conveyance of passengers." Upon habeas corpus proceedings to obtain the discharge of the relators, the act *held* unconstitutional and the relators discharged.

*Habeas corpus* on relation of George Frank, Louis Stein and Robert C. Davis. Superior Court of Cook County. Heard before Judge Theodore Brentano, April 15, 1899. The facts are stated in the opinion.

*R. Prendergast* and *John R. McFee*, attorneys for relators.

*Charles S. Deneen*, state's attorney, *Willard McEwen*, and *Wm. S. Forrest*, attorneys for defendant.

BRENTANO, J.:—

The relators were indicted at the April term, 1898, of the criminal court of Cook county, for violation of an act of the legislature enacted in 1875. The act purports to be for the prevention of frauds upon travelers and owners of railroads, steamboats or other conveyances for the transportation of passengers.

The first section of the act makes it the duty of the owner of any railroad or steamboat for the transportation of passengers to provide each agent who may be authorized to sell tickets or other certificates entitling the holder to travel upon any railroad or steamboat with a certificate setting forth the authority of such agent to make such sales. Section two of this act makes it unlawful for any person not possessed of such authority so evidenced from a railroad company, to sell, barter, or transfer for any consideration whatever, the whole or any part of any ticket or tickets, passes or other evidence of the holder's title to travel on any railroad or steamboat. Section 3 provides that any person violating the provisions of section 22 shall be liable to be punished by a fine not exceeding five hundred dollars ($500) and by imprisonment not exceeding one (1) year, or either, or both, in the discretion of the court.

The relators sued out these writs of *habeas corpus* alleging the unconstitutionality of the act, especially in so far as the validity of said section two is concerned, it being maintained that the act is in conflict with the constitution of the United States and of the state of Illinois in that it deprives the relators of property, and is an unwarranted interference with trade and personal liberty and freedom of occupation without due process of law, and in that it makes penal or criminal, an act harmless in itself and not hurtful to the community.

Counsel for relators and the special counsel appearing for the state have exhaustively and elaborately argued their respective sides of the propositions involved, and are entitled to great credit for the careful study and analysis of the questions submitted. In addition to the consideration I have

given to the oral and written arguments of counsel, I have considered the opinions of Judges Gibbons and Dunne of the circuit court, rendered in cases similar to the one at bar.[1] These judges hold the statute unconstitutional, and I am not disposed to disagree with them.

Counsel for the state in discussing the question as to whether the statute is a valid and legitimate exercise of the police power says on page 27 of his brief: *"Burdick v. People,* 149 Ill. 600, is authority that settles every question at issue in this case except the contention on behalf of the defendants which arises out of the claim that the statute is a regulation of interstate commerce. *The Burdick Case* is controlling authority until it is reversed or annulled,"* and asks "Will your honor expunge the opinion of the supreme court on grounds expressly held by the supreme court to be insufficient?"

This court does not feel bound to accept the decision of that case as reported as final upon the questions here involved, and in doing so I feel justified by reason of the novel and significant announcement made by the supreme court in the case of *In re Burdick v. People,* 162 Ill. 48, that "the judgments of affirmance in the *Burdick Cases* and the opinions of the court in deciding them are conclusive only as between the parties to those cases, viz: the people of the state of Illinois and Burdick." In view of this statement that case is enveloped with an atmosphere of doubt which detracts from its value as an authority, and I therefore do not feel bound by that decision, and am not precluded from passing upon the questions involved, unless I am without jurisdiction to do so.

The decision of the supreme court in case of *People v. Jones,* 173 Ill. 316, is cited by the special counsel for the state as presenting an insuperable barrier to the power of this court to discharge the relators on writ of *habeas corpus* even though the court should be of the opinion that the act under consideration is unconstitutional. It is claimed that the

[1] Reported in this volume.—Ed.

decision in that case has determined that constitutional questions will not be decided on *habeas corpus*. I have considered that decision and have weighed carefully the elaborate discussion of counsel concerning the same. In that case the relator, after conviction of the offense with which he had been charged, filed an original petition for a writ of *habeas corpus* in the supreme court. He had been convicted and was being held by virtue of a certain *mittimus* for his arrest and commitment issued by a competent court, and the avowed purpose of the petition in that case was to test the constitutionality of the act under which he had been convicted.

"The question presented to the supreme court was, whether or not, under the statute of this state regulating the subject of *habeas corpus,* the petitioner, who had been regularly imprisoned by virtue of a *mittimus,* after judgment, could, in the mode there pursued, test the constitutionality of the act under which the conviction was had. In deciding the question adversely to the petitioner, the court held that the proper remedy of the petitioner was an appeal from the judgment under which he was imprisoned. In that case the court concedes to the justice of the peace full power and jurisdiction to decide all questions in the case, including the question whether the law under which the prosecution was instituted was constitutional. Therefore, if the petitioner in that case had argued the question of the constitutionality of the ordinance involved in that case before the justice, the latter would have had the power to discharge the defendant had he come to the conclusion that the ordinance contravened the fundamental law of the state.

It seems to me manifest that the distinguishing feature of that case, and which moved the court to hold that the mode there pursued of bringing the case to the supreme court for review was erroneous and came too late, was to be found in the fact that a conviction had properly been had after a trial in which the question of constitutionality had not been raised. Unquestionably the *ordinary remedy* available after conviction is *by appeal* or writ of error. If there (after having been charged with the violation of an ordinance) the prisoner

was found to have been in fault for not having raised the question of constitutionality, how can it reasonably be contended in the case at bar that the relators are precluded from raising this question while they merely stand charged with the offense and before conviction?

If the effect of the Jonas decision is that constitutional questions are to be eliminated in *habeas corpus* proceedings, then it would follow that the writ itself would be suspended in cases wherein it was most urgently needed. A citizen deprived of his liberty under a law in contravention of the federal constitution or the constitution of this state, and in defiance of the provisions of either of these constitutions, is outraged to the same extent as if he were held under no color of authority whatsoever. It can not be assumed, in the absence of an expressed and unequivocal ruling, that the supreme court of Illinois intended to suspend the writ of *habeas corpus* in all cases where commitments were held under void statutes. To hold this would in effect be in defiance of the federal and state constitutions, and an attempt of the courts to suspend *habeas corpus*.

In the following cases our supreme court determined the validity of statutes on *habeas corpus* cases brought originally in that court: *People v. Turner*, 55 Ill. 280; *People v. Illinois State Reformatory*, 148 Ill. 413. Moreover, the United States supreme court has determined this question differently from the *Jonas Case*, and such is the overwhelming weight of authority. *Ex parte Siebold*, 100 U. S. 371; *Ex parte Clarke*, 100 U. S. 399; *Ex parte Smith*, 36 S. W. 628, 135 Mo. 223.

The proper view of the Jonas decision seems to me to be that the supreme court of Illinois intended by that decision to lay down a rule of practice for cases of applications for the writ of *habeas corpus in that court*. The jurisdiction of the supreme court of Illinois, and of the circuit court and of the superior court of this county, is concurrent in *habeas corpus*. It is moreover true that the supreme court of Illinois has the right to decline to assume jurisdiction in *habeas corpus*, whereas a judge of a *nisi prius* court must issue the

writ under severe penalties. The supreme court did not intend by the Jonas decision to fix any practice applicable to the circuit courts or to the superior court of this county, for the good reason that that subject was not before the court. That statutes relating to *habeas corpus* and to mandamus, though in terms applicable to both the supreme court and the circuit courts, may only be enforced in one court, is shown by repeated decisions of our supreme court in which it declines to be controlled by the mandamus statute as in the *Jonas Case* it declined to grant the application for the writ of habeas corpus. *People ex rel. Cunningham v. Thistlewood*, 103 Ill. 139; *Hawkins v. Harding*, 35 Ill. App. 25.

The writ of *habeas corpus* is the last resort of the citizen oppressed by wrongful imprisonment, wholly regardless of the person or power by whose act the imprisonment is brought about and wholly regardless of the pretense under which such illegal imprisonment is had. From time immemorial the right of a court, such as this to inquire into unlawful imprisonment, has been boundless as the instances of such imprisonment. The law has never recognized a limit as to the cases in which this court will or will not inquire into illegal restraint or imprisonment. So great is the dignity of this writ that each court and each judge exercising authority under it is responsible only to his own conscience and to his own judgment of what the law is. The law commands the court and the judge to exercise this power to the end that no man may be illegally imprisoned. The supreme court of this state in the case of *The People v. Bradley*, 60 Ill. 390, 401, says: "The circuit courts of this state possess an original common law jurisdiction in criminal cases answering to that of the king's bench. Consequently, if our *habeas corpus* act had never been passed, jurisdiction of the writ would have devolved upon the circuit courts by the common law." It has been held in the case of *People v. Bradley*, that the circuit courts possess original common-law jurisdiction in *habeas corpus,* independently of the *habeas corpus* statute. In the *Bradley Case* the supreme court, quoting from ancient books on the law say, at page 398:

"The *habeas corpus ad subjiciendum* (so termed from the language of the writ, to undergo and receive all such things as the court shall consider of the party in that behalf) is that which issues *in criminal cases*, and is deemed a prerogative writ which the king may issue to any place, he having a right to be informed of the state and condition of the prisoner, and for what reasons he is confined. It is also, in regard to the subject, deemed a writ of right, that is, such an one as he is entitled to *ex debito justitiæ*, and is in the nature of a writ of error to examine the legality of the commitment, and therefore commands the day, the caption and cause of detention to be returned." 1 Chit. Crim. Law, 120; 2 Tomlin's Law Dict., 63, 64. To the same effect is 4 Bacon's Abridgment, 564.

In the case of *The People v. Turner*, 15 Ill. 280, the supreme court of this state delivered an opinion which is one of the land marks of the law, and in which that court held, not only that it had authority in *habeas corpus* causes to pass on the validity of statutes, but held two statutes therein mentioned to be unconstitutional and void.

I am constrained to administer the law in these cases according to the wise principles announced by the supreme court in the case of *People v. Turner*. In that case the supreme court says (pp. 287–8): "It is a grave responsibility to pronounce upon the acts of the legislative department. It is, however, the solemn duty of the courts to adjudge the law, and guard, when assailed, the liberty of the citizen. The constitution is the highest law; it commands and protects all. Its declaration of rights is an express limitation of legislative power, and as the laws under which the detention is had, are in conflict with its provisions, we must so declare."

As late as 1894 the supreme court, in the case of *People v. Illinois State Reformatory*, 148 Ill. 413, on *habeas corpus*, passed upon the validity and constitutionality of a state statute. So it is manifest that from the foundation of the state down to the decision of the *Jonas Case*, it was the law of this state that the supreme court, as well as the circuit

courts, might pass on the validity of statutes in *habeas corpus* proceedings. It will be noticed in the case of *The People v. Jonas,* 173 Ill. 316, that one of the reasons for the rendition of such an opinion is found in the closing sentences of the opinion, where the court says: "The effect of granting writs in cases of this kind would be to allow defendants in all convictions under ordinances or statutes, the validity of which might be questioned, to come directly to this court by a proceeding in *habeas corpus* instead of appealing or prosecuting writs of error as the law contemplates." I therefore am of opinion that the *Jonas Case* in no manner affects the power of this court to determine the constitutionality of the acts of the legislature in a *habeas corpus* proceeding.

I have then to consider how the question stands on principle and authority. The law now under consideration is familiarly known as the "anti-scalping" law, and its object is to prevent by penalty of fine or imprisonment or both, any person not an authorized agent of a common carrier from selling, bartering or transferring for any consideration whatever, the whole or any part of any ticket or other evidence of transportation.

The court of appeals of New York in a recent case, *People v. Warden of City Prison, etc.,* 51 N. E. 1006, 157 N. Y. 116, was called upon to decide the constitutionality of an act similar to the act under which relators are held. Under the New York law as under this law, the buying and selling of passage tickets is not abolished. It is only condemned where the seller has not authority from some one of the transportation companies to act as its agent. What the New York court say is applicable here. "But this act simply turns over to the transportation companies the selection of those who are hereafter to be permitted to sell tickets. It imposes no restraints whatever upon the appointing power, nor upon the agents selected, other than that, in the purchase of tickets, he must confine himself to the properly authorized agents of the transportation companies. The business of buying and selling tickets, as to such agents, continues to be a legitimate

business, but to all citizens other than those who may be selected by the transportation companies the right to buy and sell tickets is denied, and an actual sale by them constitutes a felony.''

Here, as there, ''It is asserted by counsel that the traveling public and the transportation companies have been so defrauded by the acts of the brokers in the selling of unused or alleged to be unused passage tickets as to call for legislation of a protective character, of which this statute is the outcome. * * * It is novel legislation, indeed, that attempts to take away from all the people the right to conduct a given business, because there are wrong-doers in it, from whose conduct the people suffer. But where in the statute is to be found the evidence that its purpose is to prevent fraud? ''In the title of the act'' answers counsel, and with that answer he has to be content; for while the act is entitled ''Frauds in the sale of passage tickets'' the body of the statute does not contain any reference to forged, altered, used or stolen tickets. The sale of such tickets is made a punishable offense under other sections of the Penal Code. The provisions of the act, therefore, have reference to the selling of valid tickets, regularly issued by a transportation company. Can the legislature declare such sales to be fraudulent or prohibit them on the ground that it tends to prevent fraud? If the act prohibited is fraudulent, there can be no doubt that the legislature, under its police power, may provide for its punishment; but whether it may, under such power, interdict the sale of a valid ticket by one person to another, upon the pretext that fraud will thus be prevented, presents a very different question. I confess that I am unable to see how such a sale defrauds a transportation company. If a transportation company sells a ticket from New York to San Francisco, it undertakes to carry the holder from one place to the other. It costs the company no more to carry one person than it does the other. How then can it be defrauded or in any way prejudiced by the transfer of such ticket by the purchaser to another person.

''It is said that the prohibition of such a sale tends to pro-

tect the traveler from being defrauded. If it is a sale of a valid ticket no fraud can possibly result, and if it is not a sale of a valid ticket, then the sale is fraudulent and is prohibited by other provisions of the Penal Code.''

What the Court of Appeals further say is also applicable to this case, to wit: ''It is not contended that the business of ticket brokerage is in itself of a fraudulent character. The business can be honestly conducted; it has been so conducted in the past by honest men engaged in it, and the most that is asserted is that there are some men engaged in the business who have imposed on the public. The same assertion can be made with equal truth of every business, trade and profession. * * * Whatever the legislature's motive, the fact that it has passed an act which does not declare ticket brokerage unlawful, for it allows any person who may be fortunate enough to secure an appointment as agent for a transportation company to engage in ticket brokerage but the act does declare that if any person, other than an agent of a transportation company, undertakes to engage in the passenger ticket brokerage business, he shall be guilty of a felony; in other words that it is unlawful for all citizens of New York to engage in the buying and selling of passage tickets unless empowered to do so by the written appointment of a transportation company.''

The court then asks itself the question whether the organic law prohibits legislation of this character. It admits that it is within the power of the legislature to regulate the manner in which certain kinds of business may be conducted; but denies the power of the legislature to deprive every citizen, engaged in the ticket brokerage business, of the ''liberty'' to further conduct such business, because forsooth, there have been some dishonest persons engaged in it with the result that frauds have been perpetrated on both travelers and transportation companies, and ''to cut up root and branch, a business that may be honestly conducted to the convenience of the public and the profit of the persons engaged in it is beyond legislative power. If the law were otherwise, no trade, business or profession could escape de-

struction at the hands of the legislature if a situation should arise that would stimulate it to exercise its power, for in every field of endeavor can be found men that seek profit by fraudulent processes.'' The court thereupon pronounces the statute to be in contravention of the constitution and void, and discharged the relator who had brought *habeas corpus* proceedings to test the constitutionality of the law under which he was being deprived of his liberty.

I can not escape the sound reasoning and convincing logic of that decision, and feel bound to follow it as a guide and an authority.

The order therefore is that the relators be discharged.