## CECIL PROCTOR v. STATE.

No. A-2331.   Opinion Filed December 28, 1918.

(176 Pac. 771.)

1.  **CONSTITUTIONAL LAW—Intoxicating Liquors—Due Process of Law—Equal Protection of Law.** The legislative act making it a crime "for any person * * * to keep a place with the intent of or for the purpose of manufacturing, selling, bartering,. giving or malt liquors, or compounds whatever." * * * is condemned away, or otherwise furnishing, any spirituous, vinous, fermented by the constitutional provisions guaranteeing due process of law and the equal protection of the law.

2.  **CRIMINAL LAW—Guilty Intention—Punishment.** A guilty intention, unconnected with an overt act or outward manifestation, cannot be made the subject of punishment under the law.

3.  **SAME—Intent to Violate Law.** An unexecuted intent to violate the law amounts to no more than a thought, and is not punishable as a crime.

4.  **SAME—Crime—Acts and Guilty Intent.** An act and a guilty intent must combine to constitute a crime, and must generally concur in point of time.

5.  **INTOXICATING LIQUORS—Violation of Law—Overt Act.** An information that charges a person with "keeping a place" with the unlawful intention and purpose of bartering, selling, or giving away intoxicating liquors fails to charge all the essential elements of a crime, in that it does not charge an overt act, resulting from the unlawful intent to violate the law, and a demurrer thereto on the ground that it failed to charge a crime was well taken and should have been sustained.

*Appeal from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

Cecil Proctor was convicted of keeping a place with intent and for the purpose of unlawfully selling, bartering, and giving away intoxicating liquors, and he appeals. Reversed and remanded, with direction to trial court to discharge the accused.

*McAdams & Haskell, Harris & Nowlin, W. H. Wick, John F. Curran, Robt. A. Lowry, Mark Goode, Giddings & Giddings, J. M. Springer,* and *E. C. Patton,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty Gen., *Chas. West,* Atty. Gen., and *Smith C. Matson* and *Jos. L. Hull,* Asst. Attys. Gen., for the State.

GALBRAITH, Special Judge. The plaintiff in error was charged by information filed in the district court of Oklahoma county, tried and convicted of "keeping a place, to wit, a two-story brick building, with the intent and for the purpose of unlawfully selling, bartering, and giving away spirituous, vinous, fermented and malt liquors," etc.

To the information a demurrer was interposed upon the ground that the information fails to charge a public offense under any law of the state of Oklahoma, and that section 4 of chapter 26, Session Laws of Oklahoma 1913, on which said informtion is based, is unconstitutional and void.

The statute under which the charge was laid (section 4 of chaper 26, Session Laws 1913) reads as follows:

"Sec. 4. It shall be unlawful for any person to rent to another or keep a place with the intention of, or for the purpose of manufacturing, selling, bartering, giving away, or otherwise furnishing, any spirituous, vinous, fermented or malt liquors, or any imitation thereof, or substitute therefor, or any liquors or compounds whatsoever, whether medicated or not, which contain as much as one-half of one per centum of alcohol, measured by volume, and which is capable of being used as a beverage, except preparations compounded by any licensed pharmacist, the sale of which would not subject him to the payment of the special tax required by the laws of the United States. Any person violating any provision of this section shall be punished by a

fine of not less than fifty ($50.00) dollars, nor more than two thousand ($2,000.00) dollars, and by imprisonment of not less than thirty (30) days in the county jail, nor more than five (5) years in the state penitentiary."

It is alleged upon this appeal that the demurrer to the information was improperly overruled.

It is argued that the above statute is in excess of the power vested in the Legislature, in this, that it makes a mere intention, unexecuted, and not connected with any overt act, a crime, and that this is an impossible thing in organized society under a constitutional government. It is further argued that the ownership of property, namely, "the keeping a place," is an entirely lawful act, and that, when this lawful act is accompanied with an unlawful intent to violate the law at some future and indefinite time, that cannot be declared by statute to be a crime, so long as the unlawful intent is not connected with some overt act, to place the unlawful intent into operation by possession of intoxicating liquors or by actual "sale or barter"; that this statute runs counter to the first and fundamental principles of law and is absolutely inoperative and void.

It is admitted on behalf of the state that ownership of property, that is, "the keeping a place," is an innocent and lawful act, but it is contended that this statute was enacted in the exercise of the police power, and that, if the Legislature determined that "the keeping a place" with the purpose and intent of selling, bartering, and giving away of intoxicating liquors was detrimental to the good morals and public welfare, or was essential in the enforcement of the prohibitory law, it was within the legislative power to declare such use of property to be criminal and an offense against the law; that the statute itself does not run counter to the fundamental principles of the law; and that it does

not condemn the ownership or use of property, a mere "keeping of a place," but, when property is kept or used with unlawful intent to violate the law, it is within the condemnation of the statute and is properly denominated a crime; that the keeping a place connected with an intent to violate the law constitutes an overt act and may properly be declared to be an offense against the law. The following excerpt from the Attorney General's brief will render his position clear:

"Can it be said that the Legislature intended to make that punishable which is absolutely incapable of proof? An 'unexecuted intent' to do a thing amounts merely to a thought, and thoughts without action cannot be punished and were never intended to be punished. But it may be said that, if a person shall establish a building or place without having possession of liquor, and thereafter should say to several of his friends that some time in the future he intended to sell liquors in that particular building or place, what is to prevent his punishment under the laws?

"Here we have the keeping of the place and his voluntary statements that he intends to use such place unlawfully in the future. Our answer is that there must exist a present keeping and a present intent, and this keeping and intent, coupled, constitute the overt act. The intent is a question of fact, not of law. No intent, however felonious, unless coupled with some overt act, is criminal."

It will be observed that here is a clear admission on the part of the state that the information in the instant case was insufficient, inasmuch as the unlawful intent was not connected directly with some overt act, and therefore that the demurrer thereto was well taken. It cannot be true that "the keeping a place," coupled with the present intent to violate the law, constitutes an overt act. It is admitted that "the keeping a place" is an innocent thing, and that

an unexecuted criminal intent is not punishable as a crime, therefore that no crime is charged.

The possession or ownership of liquors is not alleged in the information, nor is it alleged that the liquors were manufactured, bartered, or given away in the place kept. The information does not attempt to charge an overt act or any attempt to place the unlawful intention into execution. As it stands, the information upon its face charges: First, the keeping of a place, an admittedly lawful act; and, second, the possession of an unexecuted unlawful intent to barter, sell, or give away liquor. And it is admitted that this unlawful intent, so long as unexecuted, amounts merely to a thought, and is not subject to punishment. In the language of Mr. Justice Sherwood, of the Supreme Court of Missouri:

"With a mere guilty intent unconnected with an overt act, or outward manifestation, the law has no concern." (*Ex parte Smith,* 135 Mo. 223, 36 S. W. 628, 33 L. R. A. 606, 58 Am. St. Rep. 576.)

So in the instant case the information merely charges an innocent act, "the keeping a place," and the possession of an unlawful, unexecuted intent, and attempts to make that a crime. There is no overt act charged in the information in connection with the unlawful intent. It is true the charging part of the information is in the language of the statute, and would be sufficient if the statute defined a crime, but the statute itself fails to define a crime, inasmuch as it attempts to make an innocent act, namely, "the keeping of a place," accompanied with an unlawful and unexecuted intent to violate the law, a crime. This the Legislature had no power to do, whatever may have been its intention in enacting the statute under con-

sideration. To constitute a crime there must be some omission or commission.

An intent to commit a crime is not indictable; and, although the intent is, in general, of the very essence of a crime, some overt act is the only sufficient evidence of the criminal intent. Kelley's Crim. Law & Prac. par. 5; 4 Blackstone Comm. 21; *Howell v. Stewart*, 54 Mo. 400; *State v. Painter*, 67 Mo. 84. The essential elements necessary to constitute a crime under the law are enumerated in Blackstone Comm. book 4, p. 20, as follows:

"An involuntary act, as it has no claim to merit, so neither can it induce any guilt; the concurrence of the will, when it has its choice either to do or to avoid the fact in question being the only thing that renders human action either praiseworthy or culpable. Indeed, to make a complete crime cognizable by human laws, there must be both a will and an act. For, though, in *foro conscientiae*, a fixed design or will to do an unlawful act is almost as heinous as the commission of it, yet, as no temporal tribunal can search the heart, or fathom the intentions of the mind, otherwise than as they are demonstrated by outward actions, it therefore cannot punish for what it cannot know. For which reason, in all temporal jurisdictions, an overt act, or some open evidence of an intended crime, is necessary in order to demonstrate the depravity of the will, before the man is liable to punishment. And, as a vicious will without a vicious act is no civil crime, so, on the other hand, an unwarrantable act without a vicious will is no crime at all. So that to constitute a crime against human laws there must be, first, a vicious will, and, secondly, an unlawful act consequent upon such vicious will."

To the same effect Mr. Bishop, in his work on Criminal Law, vol. 1, announces the rule applicable to the question under consideration as follows, in section 204:

"Now the state that complains in criminal causes, does not suffer from the mere imaginings of men. To entitle

her to complain, therefore, some act must have followed the unlawful thought. This doctrine is fundamental, and, in a general way, universal; but slight differences in its common law applications appear in the books, and now and then a statute is enacted departing from judicial precedent."

In section 206:

"Sec. 206. From the foregoing views results the rule established in the legal authorities that an act and evil intent must combine to constitute in law a crime."

And in section 207:

"Sec. 207. And generally, perhaps always, the act and intent must, to constitute an offense, concur in point of time."

A case in point is that of *Ex parte Smith,* 135 Mo. 223, 36 S. W. 628, 33 L. R. A. 606, 58 Am. St. Rep. 576, where the first and second paragraphs of the syllabus are as follows:

"A municipal ordinance making it a crime for 'any one knowingly to associate with persons having the reputation of being thieves, burglars, pickpockets, pigeon droppers, bawds, prostitutes, or gamblers, or any other person, for the purpose or with the intent to agree, conspire, combine, or confederate to commit any offense, or to cheat or defraud any person of any money or property,' is unconstitutional as being an invasion of the rights of personal liberty."

"Guilty intention, unconnected with an overt act or outward manifestation, cannot be the subject of punishment under statute."

Mr. Justice Sherwood, in the course of the opinion in the above case, says:

"This ordinance is now attacked on the ground of its unconstitutionality in that it invades the right of personal

liberty by assuming to forbid that any person should knowingly associate with those who have the reputation of being thieves, etc. And certainly it stands to reason that, if the Legislature, either state or municipal, may forbid one to associate with certain classes of persons of unsavory or malodorous reputations, by the same token it might dictate who the associates of any one may be. But if the Legislature may dictate who our associates may be, then what becomes of the constitutional protection to personal liberty, which Blackstone says 'consists in the power of locomotion, of changing situation, or moving one's person to whatsoever place one's own inclination may direct, without imprisonment or restraint, unless by due course of law'? 1 Blackstone's Commentaries, 134. Obviously there is no difference in point of legal principle between a legislative or municipal act which forbids certain associations and one which commands certain associations. We deny the power of any legislative body in this country to choose for our citizens whom their associates shall be.

"And as to that portion of the eighth clause which uses the words, 'for the purpose or with the intent to agree, conspire, combine, or confederate, first to commit any offense,' etc., it is quite enough to say that human laws and human agencies have not yet arrived at such a degree of perfection as to be able, without some overt act done, to discern and to determine by what intent or purpose the human heart is actuated. So that, did we concede the validity of the former portion of the eighth clause, which we do not, still it would be wholly impracticable for human laws to punish or even to forbid improper intentions or purposes. For with mere guilty intention, unconnected with overt act or outward manifestation, the law has no concern. *Howell v. Stewart*, 54 Mo. 404."

We quite agree with Justice Sherwood that:

"Human laws and human agencies have not yet arrived at such a degree of perfection as to be able without some overt act done to discern and to determine by what intent or purpose the human heart is actuated."

The purpose of the Legislature in the enactment of the statute is not clear, since it makes the intent to do the forbidden act a felony, and does not attempt to repeal the statute (section 3610, Rev. Laws 1910) which makes it a misdemeanor to keep a place for the sale of intoxicating liquors, the evil presumably intended to be suppressed. These statutes present the strange anomaly, the one denominates the completed act, keeping a place where intoxicating liquors "are received and kept for sale" as a misdemeanor, while the other condemns "the keeping a place" with intent to sell, etc., as a felony and makes it punishable as such, thus penalizing the intent to do the act as a felony, while the act when done is penalized only as a misdemeanor. In any view of the case this statute is condemned by the due process of law provision of the Constitution.

We conclude that "the keeping a place" with the unlawful purpose and intent to sell, barter, or give away intoxicating liquors cannot be declared to be a crime, for the reason that such an act, although connected with an unlawful intent, still lacks an essential element necessary to constitute a crime under the law, in this, that the statute fails to connect such unlawful intent with any overt act, as a result or consequence, and further fails to charge the possession of the liquors, the very means essential to the consummation of the unlawful purpose to violate the prohibitory law, and therefore the statute under consideration does not define a crime, and that the information in the instant case did not charge an offense, and the demurrer thereto was well taken, and should have been sustained.

It is therefore ordered that the judgment of conviction be vacated, and the cause remanded, with direction to the trial court to discharge the accused.

DOYLE, P. J., and ARMSTRONG, J., concur.

NOTE. Judge SMITH C. MATSON, a member of this court, having briefed the constitutionality of the act on which the charge is based while an Assistant Attorney General, disqualified himself to sit, and this fact having been certified to the Governor of the state, C. A. GALBRAITH, Esq., was duly appointed and commissioned a special judge of the Criminal Court of Appeals to sit in his place.