STATE of Missouri,
Plaintiff–Respondent,

v.

Gary L. BIBLE, Defendant–Appellant.

No. 51713.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 10, 1988.

William L. Webster, Atty. Gen., Elizabeth Levin Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

J. Martin Hadican, Steven M. Dioneda, Clayton, for defendant-appellant.

SIMON, Presiding Judge.

Gary L. Bible, appellant, appeals from a conviction of first degree murder in violation of § 565.020(1) RSMo (1986). Appellant was found guilty by a jury in the Circuit Court of St. Louis County and sentenced to imprisonment for life without eligibility for probation or parole pursuant to § 565.020(2) RSMo (1986).

On October 20, 1987, this court issued its opinion in this case. Appellant filed his Motion for Transfer To The Supreme Court on December 9, 1987. Our Supreme Court accepted transfer of the case on January 20, 1988. The parties submitted additional briefs to the Supreme Court. On April 20, 1988, the court retransferred the case and issued the following order: "Cause ordered retransferred to the Missouri Court of Appeals, Eastern District. *See United States v. Owens*, No. 86–877, decided February 23, 1988 [—— U.S. ——, 108 S.Ct. 838, 98 L.Ed.2d 951]." We reissue our amended opinion in light of said order.

On appeal, appellant alleges four points: (1) that § 491.074 RSMo (1986) which allows prior inconsistent statements of witnesses to be admitted in certain cases is unconstitutional; (2) that the trial court erred in the punishment phase of the trial by permitting the state to question appellant concerning an irrelevant relationship and statements which tended to inflame and prejudice the jury; (3) that the search warrant issued in the case was invalid; and, (4) that the trial court submitted erroneous verdict directing instructions. We affirm.

The evidence viewed in the light most favorable to the state would permit the jury to find the following facts: On August 24, 1985, appellant and his girl friend drove to Robert Smith's house in appellant's white Chrysler. After a while the victim, James Freiner, Jr., arrived and began conversing with appellant and Smith. Shortly thereafter, appellant dropped off his girl friend at her home at approximately 10:30 p.m. Appellant told his girl friend that he would be back no later than 11:30 p.m. if everything went well. Appellant stated that he did not want to involve her in anything and left in his white Chrysler.

Appellant returned to his girl friend's house at 1:00 a.m. The girl friend noticed Busch beer cans in appellant's car as the two of them drove to a local motel. Appellant stated that things did not go well and that Freiner was dead. When she began asking questions, appellant snapped that she should not ask any questions, that he did not want her to know anything and that the less she knew the better off she was. The next morning, the two drove to a car wash where the girl friend washed the outside of the car and appellant cleaned the interior.

At approximately 12:23 a.m. on August 25, 1985, a resident of rural Chesterfield heard a series of gunshots near his property. When the resident went to inspect, he saw a white Chrysler pulling off Centaur Road and turning north on Eatherton Road. At approximately 12:30 to 12:45 a.m. the same morning, two witnesses noticed a person, later identified as Freiner lying in the middle of Centaur Road. As they drove by, Freiner lifted his head and then put it down on his arm. The two witnesses were frightened that the perpetrator was still in the area, so they drove off and called the St. Louis County Police. When the police arrived, Freiner was dead. Freiner's body was laying face down in the road. His pants zipper was open. There was blood zigzagging approximately 500 feet in the road. At the beginning of the trail of blood, investigators recovered two Busch beer cans, one of which contained latent fingerprints of the victim.

Upon learning of the death of Freiner, Officer Tim Nisbet of the St. Louis County Police contacted Robert Smith due to Nisbet's knowledge of Smith's association with Freiner. Following Nisbet's conversation

with Smith, the homicide investigation centered on appellant. On August 26, 1985, Nisbet received an anonymous telephone call telling him the whereabouts of the white Chrysler allegedly involved in the homicide. After going to the location described in the anonymous call, Nisbet found the white Chrysler. The car was towed to the St. Louis City Police garage. Nisbet submitted an affidavit in an effort to obtain a search warrant. A search warrant was issued and a thorough search of the Chrysler ensued. The search yielded blood stains which turned out to be Freiner's blood type.

On August 28, 1985, Nisbet interviewed Ron Osthoff in connection with the investigation. Osthoff said appellant admitted to him that appellant had killed Freiner. Appellant further stated to Osthoff that appellant was to be paid 100 tablets of Dilaudid for murdering Freiner. According to Osthoff, appellant drove Freiner to rural Chesterfield where they had planned "to do a score." At some point Freiner and appellant got out of the car to urinate. Osthoff said that appellant then shot Freiner in the back and Freiner turned towards appellant to ask why appellant was doing it. Freiner then began to run away and appellant fired several more shots at him.

Appellant's first point attacks the constitutionality of § 491.074 RSMo (1986) (all further references shall be to RSMo (1986) unless otherwise noted), which provides:

> Notwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in the trial of an offense under chapter 565, 566 or 568, RSMo, shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement.

The gist of appellant's first point is that the statute violates the equal protection clauses and the due process clauses of the Missouri Constitution and the United States Constitution in that the statute is not rationally related to a legitimate state purpose, operates to the disadvantage of those who are charged with the specific crimes mentioned in the statutes, and denied appellant a fair trial.

The state argues that appellant failed to preserve for appellate review the constitutional challenge to § 491.074 by failing to include the issue in his motion for new trial. We note that appellant made a timely objection to the impeachment testimony offered by the state during the direct examination of Ron Osthoff. The objection concerned the state's alleged failure to establish: (1) that the state had been surprised by the testimony of Ron Osthoff; and, (2) that Ron Osthoff was a hostile witness. Appellant did not make a constitutional claim at that time. In his motion for new trial, appellant restated his trial objection to the impeachment testimony and again failed to raise any constitutional grounds. The first time appellant presents constitutional objections to § 491.074, complete with appropriate citations to the Missouri Constitution and the United States Constitution, is in his brief on appeal.

If the constitutionality of the statute were timely raised so as to be preserved for appellate review, jurisdiction of this case lies in our Supreme Court under Mo. Const., Art. V, § 3 (as amended 1982), and we would lack jurisdiction to entertain this appeal. *In re $29,000.00 In U.S. Currency*, 682 S.W.2d 68, 72 (Mo.App.1984). Here, appellant timely objected, though not on constitutional grounds, at trial and in his motion for new trial concerning the state's impeachment of its own witness. In the brief on appeal, appellant raised a constitutional objection for the first time. Appellant failed, however, to make a specific constitutional objection to § 491.074 during the trial and in the motion for new trial.

In *State v. Danforth*, 654 S.W.2d 912, 925–6 (Mo.App.1983) (Per Curiam decision on the Motion for Rehearing), our brethren in the Western District recognized two seemingly conflicting lines of cases addressing constitutional challenges to our statutes. On the one hand, there is a long line of cases holding that an unconstitutional law is no law so that its constitutionality is open to attack at any stage of the proceedings, even after conviction and judg-

ment, upon the ground that no crime could have been committed, and therefore, the trial court has no jurisdiction. *State v. Danforth*, 654 S.W.2d at 925, *citing, Ex parte Smith*, 135 Mo. 223, 36 S.W. 628, 630 (1896). On the other hand, there is an equally long line of cases holding that constitutional questions—even those challenging the facial constitutionality of a statute under which a defendant is charged—must be raised at the earliest possible moment and preserved in the motion for new trial. *State v. Danforth*, 654 S.W.2d at 925, *citing, State v. Mackey*, 259 S.W. 430 (Mo. 1924). The *Smith* line of reasoning was most recently applied by our Supreme Court in *State ex rel. Williams v. Marsh*, 626 S.W.2d 223 (Mo. banc 1982). The *Mackey* rule was most recently upheld by our Supreme Court in *State v. Wickizer*, 583 S.W.2d 519 (Mo. banc 1979). The Western District adopted the rule set forth in *Mackey* in *State v. Danforth*, 654 S.W.2d at 926 and in *State v. Sprous*, 686 S.W.2d 12 (Mo.App.1984). We find, however, that the present case is distinguishable from the *Smith* and the *Mackey* lines of cases.

▮ Here, an evidentiary statute's constitutionality is being challenged, whereas in *Smith* and *Mackey* the challenged statute was the statute under which appellant was charged. In *Kansas City v. Hammer*, 347 S.W.2d 865, 868 (Mo.1961), a case following *Smith*, the court held as follows:

> This state is thoroughly committed to the proposition that the unconstitutionality of an ordinance or *statute on which a prosecution is based* cannot be waived. The invalidity of such an act on constitutional grounds goes to the subject matter of the prosecution and may be raised at any stage of the proceedings, even by a collateral attack after conviction. (Emphasis ours).

Since appellant's constitutional challenge is directed to § 491.074 and not the statute under which he was charged, the subject matter jurisdiction of the trial court is not under attack. As such, *Smith* and its progeny are distinguishable and do not ap-

ply. Likewise, in *Mackey* the constitutional challenge is to the statute under which the defendant was charged. Therefore, *Mackey* is distinguished from the case at hand, as well. Absent a showing of plain error, appellant's failure to raise the constitutional objection in his motion for new trial resulted in the point not being preserved for appeal. *State v. Peterson*, 518 S.W.2d 1, 3 (Mo.1974). Our review of the record does not indicate any manifest injustice. *U.S. v. Owens*, 484 U.S. ——, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) (The Confrontation Clause of the Sixth Amendment of the United States Constitution guarantees an opportunity for effective cross-examination and is satisfied where the defendant has a full and fair opportunity to bring out facts tending to discredit the witness' testimony); *State v. Bowman*, 741 S.W.2d 10 (Mo. banc 1987) (Admission of witness' prior inconsistent statements did not violate the Confrontation Clauses of the Missouri or the United States Constitutions. *Cf., Id.* at 14 n. 6). Point denied.

▮ In his second point, appellant alleges that the trial court should not have allowed the state during the penalty phase of the trial to question appellant concerning appellant's relationship with another person. The person's surname is associated with some notoriety in St. Louis. The remarks allegedly were not designed to elicit any relevant information and served to inflame and to prejudice the jury. Appellant further contends that the state should not have been allowed to question appellant during the penalty phase about some statements he allegedly made to a police officer.

Section 565.020(2) provides the punishment for first degree murder: "Murder in the first degree is a class A felony, except that the punishment shall be *either death or imprisonment for life without eligibility for probation or parole*, or release except by act of the governor" (emphasis ours). Hence, there are only two possible punishments allowable under § 565.020(2), death or life imprisonment. The statute became effective on October 1, 1984, well before the incidents surrounding this case occurred.

Appellant received the lesser of the two sentences provided by the statute; he received life imprisonment. The trial court was without power to reduce punishment below the minimum for first degree murder. *McClain v. State*, 448 S.W.2d 599, 603 (Mo.1970). Thus, we find that appellant was not prejudiced by the state's questions during the punishment phase. *State v. Eggers*, 675 S.W.2d 923, 931 (Mo.App. 1984). Thus, if error, it is harmless. Point denied.

■ In appellant's third point, he contends the search warrant was based upon an affidavit which did not provide sufficient probable cause upon which the search warrant could be issued.

In 1983, the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, espoused a "totality of the circumstances" test for the existence of probable cause, stating:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed. 2d at 548 (*citing, Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697, 708 (1960)). Furthermore, an issuing judge's determination as to what facts and circumstances constitute probable cause is accorded great deference by the reviewing court. *State v. Hodges*, 705 S.W.2d 585, 588 (Mo.App.1986).

■ Appellant incorrectly argues that the affidavit should be taken point by point to establish the sufficiency of probable cause. Under the *Gates* test, we examine the affidavit as a whole to determine whether the totality of the circumstances set forth therein provide a fair probability that evidence of the crime can be found in the car.

The affidavit contains, in essence, eight paragraphs, seven of which set out the various facts and circumstances upon which the search warrant is requested. Appellant argues that the affidavit "consists of nothing more than a stringing together of vague descriptions and accounts that would compel a magistrate to solely [sic] reatify [sic] the vague statements of the officer to determine the existence of probable cause."

On the contrary, we find the affidavit to be sufficient. Officer Nisbet investigated the information given to him by the two hearsay informants mentioned in the affidavit. In both instances corroborating evidence was uncovered and included in the affidavit which verified the information given by the informants. "It is enough, for purposes of assessing probable cause, that '[c]orroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.'" *Illinois v. Gates*, 462 U.S. at 244–5, 103 S.Ct. at 2335, 76 L.Ed.2d at 552 (*citing, Jones v. United States*, 362 U.S. at 269, 271, 80 S.Ct. at 735, 736, 4 L.Ed.2d at 707, 708). As such, we find the affidavit was sufficient. Point denied.

■ In his fourth point, appellant contends that the trial court erred in giving instructions 10 and 12, which were tendered by the state, and refusing to give instructions A and C, which were tendered by appellant, because instructions 10 and 12 inaccurately stated the law and were ambiguous, confusing and misleading. We note that the state argues correctly that appellant failed to preserve the issue because of Rule 30.06(e) which provides that where a point on appeal relates to the giving of an instruction, the instruction must be set forth in full in the argument portion of the brief.

Even though the point was not preserved, we shall review for plain error. Instructions 10 and 12, as well as instructions A and C, conform to MAI–CR2d. Instructions 10 and A are similar versions of

MAI–CR2d 13.02, verdict directors for Murder in the First Degree. Instructions 12 and B are similar versions of MAI–CR2d 13.04, verdict directors for Murder in the Second Degree: Conventional. The difference between the two pair of instructions lies in the variance in language provided for in the Notes on Use for MAI–CR2d 13.02 and the Notes on Use for MAI–CR2d 13.04. Instructions 10 and 12 use the optional language, "was aware," and "was practically certain to cause," while Instructions A and C use the optional language "knew," and "was causing."

The trial court was required to submit instructions to the jury which complied with MAI–CR2d. Rule 28.02. The trial court was given four instructions which complied with MAI–CR2d. The court accepted the two instructions tendered by the state. The Notes on Use for MAI–CR2d 13.02 and MAI–CR2d 13.04 direct the trial court to use the state's version of the instruction where both parties submit MAI–CR2d instructions. (See, MAI–CR2d 13.02 Notes on Use # 2 and MAI–CR2d 13.04 Notes on Use # 3). We are powerless to declare erroneous a pattern criminal instruction contained in MAI–CR[2d]. *State v. Washington*, 570 S.W.2d 838, 843 (Mo. App.1978). Furthermore, we will not find error where the trial judge follows the mandate of the MAI. *State v. Randolph*, 698 S.W.2d 535, 542 (Mo.App.1985). Thus, we find no error, plain or otherwise. Point denied.

Judgment is affirmed.

CRANDALL and GRIMM, JJ., concur.