STATE of Missouri, Respondent,

v.

James A. BEINE, Appellant.

No. SC 86190.

Supreme Court of Missouri,
En Banc.

April 26, 2005.

As Modified on Denial of Rehearing
May 31, 2005.

Lawrence J. Fleming, N. Scott Rosenblum, Stephen R. Welby, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan Buchheim, Deborah Daniels, Asst. Attys. Gen., Jefferson City, for respondent.

CHARLES B. BLACKMAR, Senior Judge.

This case comes to the writer on recent reassignment.

James Beine was employed as a counselor at the Patrick Henry Elementary School in St. Louis City. During the 2000–2001 school year one of Mr. Beine's duties was to prevent disruptive behavior by students in the school's halls and restrooms. To perform this duty, Mr. Beine often had to enter the restrooms designated for males.

During the 2000–2001 school year, all restrooms in the school were designated only as being for males, females, or unisex. No restrooms were expressly designated for students only, and adults sometimes used the large public restrooms frequented by the students.

K.L., C.M., and J.M., three male students at Patrick Henry under the age of 14, asserted that in the spring of 2001, Mr. Beine exposed himself to them while they were using the restroom near the school gym.

K.L. and C.M. testified that sometime in the spring of 2001 Mr. Beine entered the restroom while they were using it. Mr. Beine proceeded to use a urinal next to the boys. C.M. and K.L. further allege that Mr. Beine stood 3 or 4 feet from the urinal and urinated into it in an arc. K.L. and C.M. claimed that they could see Mr. Beine's "private part."

J.M., C.M.'s younger brother, testified that on another occasion in the spring of 2001, he entered the restroom while Mr. Beine was using a urinal. J.M. proceeded also to use a urinal and then wash his hands at the sink while Mr. Beine continued to use the urinal. As J.M. was washing his hands, a group of boys entered the restroom and began causing a ruckus. J.M. claimed that Mr. Beine turned from the urinal and told the boys to "shut up." Mr. Beine's pants were allegedly unzipped and his penis exposed when he turned to discipline the boys. Mr. Beine quickly turned back and zipped up his pants before proceeding to prevent the restroom disturbance.

Mr. Beine was initially indicted on three counts of sexual misconduct involving a child by indecent exposure, in violation of section 566.083.1(1) [1], reading as follows:

A person commits the crime of sexual misconduct involving a child if the person:

(1) Knowingly exposes the person's genitals to a child less than fourteen years of age in a manner that would cause a

---

unless otherwise indicated.

reasonable adult to believe that the conduct is likely to cause affront or alarm to a child less than fourteen years of age.

A fourth count, involving K.L., was added later. The jury found Mr. Beine guilty on all four counts. The trial court accepted the jury's recommendation and sentenced Mr. Beine to four years on each count. It ordered three of the sentences to be served consecutively and one to be served concurrent with the consecutive sentences for a total of twelve years imprisonment. Mr. Beine appealed. Because he challenges the validity of a state statute, this Court has jurisdiction. Mo. Const. art. V, sec. 3.

## DISCUSSION

■ The guilty verdict on all four counts must be reversed because the evidence adduced by the state at trial is insufficient to convict Mr. Beine of any of the charges. On appeal, the state is obliged to point to substantial evidence in support of each of the essential elements of the offense charged. The state has failed to do so in this case.

There is no question that the appellant knowingly exposed his genitals to persons under the age of fourteen. This is often necessary in a men's restroom. There is serious question, however, about the sufficiency of the evidence to support the charges "that the defendant [exposed his genitals] in a manner that would cause a reasonable adult to believe that such conduct was likely to cause affront or alarm to a child less than fourteen years of age."

The state is not required to show that any child was actually affronted or alarmed. There was no direct evidence as to how a reasonable adult might react to the appellant's behavior, and there is no citation that sheds any light on how that proposition might be established by evidence.

The state puts strong reliance on the testimony of a fellow inmate of an Illinois jail as to a conversation he said he had with the appellant, after he was arrested on the present charges. Conceding the jury's right to believe this testimony, and overlooking the notorious unreliability of jailhouse snitches, the testimony still manifestly lacks substance. It does not show anything about the appellant's state of mind when he committed the acts shown by the evidence. What it shows, rather, is a realization after the fact that something about the restroom encounter, or any other encounter for that matter, bothered some boys. The testimony proves nothing about how the appellant's conduct might appear to a reasonable adult at the time it occurred.

One of the appellant's duties at the school was to monitor the restroom. Anybody who has attended a public grade school knows that boisterous behavior is not unusual in restrooms, especially when students are released in substantial numbers for recess. Thus, the appellant was in a place where his duties required him to be. When no boys are present, there is no need for a monitor. There was no prohibition on his using the restroom for his personal needs while he was properly there. It is quite common for men and boys to use a common facility at sporting events, Boy Scout camps, horse shows, and other public events. In so doing, it is necessary for the users to expose their private parts. Fathers regularly take their pre-K sons into public restrooms. The evidence that on two occasions the appellant stood at a distance from the urinal and urinated in an arc in the presence of the boys cannot reasonably be construed as likely to cause affront or alarm. The boys used such phrases as "embarrassed" and "funny" when talking about their reaction to the incident, but

these hardly equate to "affront" or "alarm." The argument that the children were not accustomed to any adults being in the restroom when they were present is at war with the admitted evidence that the appellant had the duty of monitoring the restroom.

*State v. Moore,* 90 S.W.3d 64, 67–69 (Mo. banc 2002), a case on which the state places strongly reliance, approves the dictionary definition of "affront" as "a deliberately offensive act or utterance; an offense to one's self respect," and of "alarm" as "apprehension of an unfavorable outcome, of failure, or dangerous consequences; an occasion of excitement or apprehension." *Moore* goes on to say, "To be impolite is not enough. To be annoying is insufficient." "Affront" might connote an exhibition by a man of his genitalia to a woman or girl. "Alarm" would indicate a suggestion of physical encounter to either a male or a female. The record shows no indication of anything that would properly come within these definitions. The state simply has not proved criminal conduct under the applicable statute. For this reason, the judgment on all counts must be reversed.

■ While this conviction cannot stand because the evidence was insufficient to convict Mr. Beine, this conviction also cannot stand because the portion of the statute upon which Mr. Beine was charged and convicted is patently unconstitutional.[2]

The appellant essentially claims that section 566.083.1(1) is unconstitutional because it punishes innocent conduct, contains no requirement of criminal intent (mens rea), and does not advise a person in the position of the appellant as to what he must do to avoid violation of the statute when his conduct is otherwise lawful. The only express statutory requirement of

knowing conduct is that of knowingly exposing one's genitals to a child less than 14 years of age. The act of a man in exposing his genitals in the process of urinating in a public restroom is not only innocent but often necessary. The statute contains two essential elements: first, the act of exposing one's genitals and, second, exposure in a manner that would cause a reasonable adult to believe that the conduct is likely to cause affront or alarm to a child ·less than 14 years of age. The appellant argues that this last portion of the subsection is completely lacking in any explicit requirement of a mental state.

■ In essence, Mr. Beine contends that the statute is overbroad—it prohibits conduct to which a person is constitutionally entitled along with conduct that a person has no right to engage in. Mr. Beine is correct. A person necessarily must knowingly expose himself in a great many situations. One of those situations is when a man uses a public restroom. Even if a reasonable person might think that in some of these restroom situations a child is likely to suffer affront or alarm from witnessing such exposure, that alone cannot make the exposure criminal. If that were the case, no person would ever be able to use a public restroom without risking a criminal charge. As such, the statute prohibits two types of conduct: some of which a person has no right to engage in and the other of which a person has a right to engage in. When a statute prohibits conduct a person has no right to engage in and conduct a person has a right to engage in, the statute is unconstitutionally overbroad. *See City of St. Louis v. Burton,* 478 S.W.2d 320, 323 (Mo.1972); *Christian v. Kansas City,* 710 S.W.2d 11, 12–14 (Mo. App.1986).

---

2. The constitutionality of subdivisions (2) and (3) of section 566.083.1 is not addressed.

■ The state attempts to avoid this result by making two arguments. First, it is argued that even if the statute is unconstitutionally overbroad, the court cannot strike down the statute because Mr. Beine was engaging in conduct that was not constitutionally protected. This argument fails under the doctrine of overbreadth. Under that doctrine, a person may contest the constitutionality of a statute even if he was not engaging in constitutionally protected conduct. For example, in *State v. Carpenter*, 736 S.W.2d 406 (Mo. banc 1987), this Court struck down a "disturbing the peace" statute as being overbroad, in spite of this writer's pleas to adopt a saving construction. *Carpenter* represents the law of this state. *See State v. Moore*, 90 S.W.3d 64, 71 (Teitelman, J. dissenting).

■ The state further argues that the overbreadth doctrine should not apply to this case because this is not a first amendment case. It is true that when a case involves a non-speech related constitutional attack "the overbreadth doctrine is rarely applicable." *Caesar's Health Club v. St. Louis County*, 565 S.W.2d 783, 788–89 (Mo.App.1978). But Missouri courts have found the overbreadth doctrine applicable to non-first amendment cases in the past. For example, this Court extended the overbreadth doctrine to strike down a loitering ordinance in *City of St. Louis v. Burton*, 478 S.W.2d 320, 323 (Mo.1972), despite the fact that no first amendment claims were made. The court of appeals relied on *Burton* to extend the overbreadth doctrine and strike down a solicitation ordinance in *Christian v. Kansas City*, 710 S.W.2d 11, 12–14 (Mo.App.1986), even when the appellant made no first amendment arguments. Like the solicitation ordinance in *Christian*, the statute in this case "reaches beyond conduct which is calculated to harm and could be used to punish conduct which is essentially innocent," so it is overbroad. *Id.* at 13.

■ The purpose of the overbreadth doctrine is to ensure that a statute does not punish innocent conduct. The Court may take judicial notice that all persons have to relieve themselves regularly, that the need for such relief may arise suddenly, that public facilities are regularly provided, and that males of all ages regularly use the facilities provided for them, necessarily exposing their genitals in the process. Section 566.083.1(1) leaves adults in a state of uncertainty about how they may take care of their biological needs without danger of prosecution when a child is present in the same public restroom. Because a person's right to use public restrooms is about as fundamental a right as one can imagine, probably equal to or more fundamental than speech rights, the overbreadth doctrine should extend to this case and permit Mr. Beine to contest section 566.083.1(1) even if he had no right to engage in the conduct he engaged in.

But it is not clear that Mr. Beine had no right to do what he did. The evidence that the state introduced at trial essentially showed only that Mr. Beine used a public restroom while boys were present and stood at a little further distance from the urinal than men usually do, and that Mr. Beine accidentally turned around without zipping his pants zipper up to discipline some boys that were causing a disturbance in the restroom. This is constitutionally protected conduct, so even if the overbreadth doctrine did not apply to this case, Mr. Beine can still contest the constitutionality of the statute by arguing that it prohibits conduct to which he is constitutionally entitled to engage in. So the aspect of the overbreadth doctrine as applied in *Carpenter*, that of allowing an appellant to take advantage of the doctrine because of the effect of the statute on others, even

though the appellant's conduct may not represent protected speech, has no application here, because this appellant was engaging in lawful, and necessary, conduct.

The state also seeks to hold that section 566.083.1(1) is constitutional by applying the "knowingly" mens rea requirement to both the exposure and to the manner of exposure requirements enumerated in the statute. Specifically, the state argued that 566.083.1(1) requires the state to present evidence not only that the appellant knowingly exposed his genitals to a child less than 14 years old, but also that he knowingly did so in a manner that would cause a reasonable adult to believe that the conduct was likely to cause affront or alarm to a child of less than 14 years. The state thereby adds a word that the legislature did not see fit to include, suggesting that the addition is appropriate pursuant to the Court's duty to sustain a statute as against a constitutional challenge if at all possible.

The only authority relied upon by the state to rewrite section 566.083.1(1) is *State v. Moore*, 90 S.W.3d 64, 67 (Mo. banc 2002), but *Moore* involved section 566.095, a sexual solicitation statute. That statute makes criminal a defendant's conduct when the defendant "solicits ... another person to engage in sexual conduct under circumstances in which he knows that his requests or solicitation is likely to cause affront or alarm." That statute implies knowing conduct in the act of solicitation because knowledge is inherent in the word "solicitation." The statute also specifically enumerates a knowing mens rea to the "likely to cause affront or alarm" requirement. As such, the statute governing *Moore* contains the explicit language of scienter that section 586.083.1(1) lacks.

*Moore* also provides little if any instruction for this case because *Moore's* facts are very different from the facts in this case. There a 61-year-old man solicited a 13-year-old virgin to perform an act of fellatio on him. The Court had no problem in finding that Moore's conduct was within "a core of unprotected expression" that could be punished, even by a statute that is rather broadly drawn.

Section 566.083.1(1) differs from the statute involved in *Moore* by referring to exposure in "a manner that would cause a reasonable adult to believe that the conduct is likely to cause affront or alarm to a child less than fourteen years of age," rather than focusing on the effect of the exposure on the child or children witnessing the exposure. The accused is required to guess what a hypothetical reasonable adult might believe as to the effect on the children witnessing the event. No precedent for this kind of requirement has been cited. It is a slim reed to support a 12-year sentence. The *Moore* statute requires a direct and knowing address to the child, who presumably would be the person affronted or alarmed. It is clearly distinguishable.

## CONCLUSION

The judgment on all counts is reversed. Inasmuch as the state has had an opportunity of proving its case, and has failed to do so, double jeopardy prohibits a retrial. The case, then, should be remanded with directions to enter judgment of acquittal on all counts. *State v. Self*, 155 S.W.3d 756 (Mo. banc 2005).

WHITE, C.J., WOLFF and TEITELMAN, JJ., concur.

STITH J., concurs in part and dissents in part in separate opinion filed.

PRICE and LIMBAUGH, JJ., concur in opinion of STITH, J.

RUSSELL, J., not participating.

LAURA DENVIR STITH, Judge, concurring in part and dissenting in part.

I concur in the principal opinion's determination that there was insufficient evidence to support the submission as to J.M. I dissent from the principal opinion's determination that there was insufficient evidence to support the submissions as to C.M. or K.L. and from its finding that section 566.083.1, RSMo 2000,[1] is unconstitutional based on its erroneous conclusion that the statute solely requires proof that defendant knowingly exposed his genitals to a child under 14. On its face, the statute requires proof that defendant knowingly exposed his genitals to a child under 14 in a manner that would cause a reasonable adult to believe that the conduct is likely to cause affront or alarm to a child less than 14. This is not unduly vague or overbroad. Because the evidence of such conduct was sufficient to support the guilty verdicts as to the incidents involving K.L. and C.M., I would affirm those convictions.

## I. FACTUAL BACKGROUND

A more detailed factual statement is appropriate here than that set out in the principal opinion as a basis for addressing Mr. Beine's sufficiency claims.

James Beine was employed as a counselor at Patrick Henry Elementary School in St. Louis for the 2000–2001 school year. One of his duties was to monitor the hall and restrooms to prevent disruptive behavior. School policy and practice sometimes required male staff members to enter the boys' restrooms in their roles as "bathroom monitors."

K.L., C.M., and J.M. were students at Patrick Henry during the 2000–2001 school year. At that time, the school did not have a restroom solely designated for the

male faculty and staff, although there were unisex restrooms available for faculty and staff throughout the building. Mr. Washington, the school's principal, testified that there was no written policy forbidding use of the boys' restrooms by adult staff, but that it would not have been considered appropriate for the adult staff members to have used the children's restrooms when the children were using them, although adult staff might use these restrooms on occasion if no children were present.

The present case grew out of occurrences in the spring of 2001 in which Mr. Beine allegedly exposed himself to three boys, K.L., C.M., and J.M., on three different occasions, while they were using the boys' restroom near the school gym. Mr. Beine initially was indicted on three counts of sexual misconduct involving a child by indecent exposure. A fourth count, involving K.L., was later added. The jury found Mr. Beine guilty. He received 4 years on each count.

## II. CONSTITUTIONALITY OF SECTION 566.083.1

Because an understanding of section 566.083.1's meaning is necessary in order to determine whether the evidence supported the four counts submitted and whether his conduct can constitutionally form the basis of a conviction, Mr. Beine's argument that the statute is unconstitutional will be addressed first.

Mr. Beine alleges that section 566.083.1 permits an adult to be convicted of sexual misconduct if a child of less than 14 merely sees the person's genitals, even if the adult has not knowingly caused that child alarm and has acted without inappropriate intent. The statute itself says otherwise. It states in relevant part:

1. All statutory citations are to RSMo 2000, unless otherwise indicated.

A person commits the crime of sexual misconduct involving a child if the person:

1. Knowingly exposes the person's genitals to a child less than 14 years of age in a manner that would cause a reasonable adult to believe that the conduct is likely to cause affront or alarm to a child less than 14 years of age.

Mr. Beine acknowledges that the statute expressly requires that he act knowingly, but argues that the word "knowingly" only modifies the immediately following 13 words, "exposes the person's genitals to a child less than 14 years of age", and not the remaining 30 words of the sentence in which it appears, although the statute has no punctuation so indicating. He argues that, as so construed, the statute is unconstitutionally vague because a person could be subjected to prosecution without knowing that his conduct was likely to cause such affront or alarm.

Challenges to the constitutionality of a statute are legal issues that are reviewed *de novo. Baldwin v. Dir. of Revenue,* 38 S.W.3d 401, 405 (Mo. banc 2001). "A statute is presumed to be constitutional and will not be invalidated unless it clearly and undoubtedly violates some constitutional provision and palpably affronts fundamental law embodied in the constitution." *Bd. of Educ. of St. Louis v. State,* 47 S.W.3d 366, 368–369 (Mo. banc 2001). Any doubt concerning a statute's constitutionality must be resolved in favor of its validity. *State v. Mahurin,* 799 S.W.2d 840, 842 (Mo. banc 1990). "[W]hen a constitutional and unconstitutional reading of a statute are equally possible," the court must choose the constitutional one. *Spradlin v.*

*City of Fulton,* 924 S.W.2d 259, 263 (Mo. banc 1996).[2] In addition, the rule of lenity requires that ambiguity in a penal statute be construed against the government and in favor of persons on whom the penalties will be imposed. *J.S. v. Beaird,* 28 S.W.3d 875, 877 (Mo. banc 2000). *See also State v. Rowe,* 63 S.W.3d 647, 650 (Mo. banc 2002).

These principles require rejection of Mr. Beine's argument that section 566.083.1 does not require that a defendant act "knowingly" as to the conduct that forms the basis for violation of that statute. As noted above, the paragraph in question states:

A person commits the crime of sexual misconduct involving a child if the person:

1. *Knowingly exposes the person's genitals* to a child less than 14 years of age *in a manner that would cause a reasonable adult to believe that the conduct is likely to cause affront or alarm to a child less than 14 years of age.*

Sec. 566.083.1 (emphasis added). The meaning of the italicized portion of the statute has been addressed previously by this Court, albeit in *dicta,* in *State v. Moore,* 90 S.W.3d 64, 67 (Mo. banc 2002). *Moore* rejected an argument that another statute, section 566.095.1, was unconstitutionally vague because it made solicitation of sexual conduct a crime if done "under circumstances in which he knows that his requests or solicitation is likely to cause affront or alarm." *Id.* In discussing why section 566.095.1 was constitutional as to child victims, this Court compared it to section 566.083.1, the statute at issue in the instant case, and to another statute using similar language. *Moore* noted that

**2.** *See also State v. Burns,* 978 S.W.2d 759, 760 (Mo. banc 1998) ("This Court is bound to adopt any reasonable reading of the statute that will allow its validity and to resolve any doubts in favor of constitutionality"); *The*

*Stroh Brewery Co. v. State,* 954 S.W.2d 323, 326 (Mo. banc 1997) ("When alternative readings of a statute are possible, we must choose the reading that is constitutional").

both of the latter statutes "prohibit conduct *that is known or believed* 'likely to cause affront or alarm', presumably to distinguish a criminal act of exposing oneself from conduct that is accidental, inadvertent, or otherwise done without an intent to do harm." *Id.* at n. 8 (emphasis added). It said this was sufficiently specific to avoid constitutional challenge.

*Moore* was correct in its reading of section 566.083.1. The word "knowingly" as used in section 566.083.1 applies to the entire sentence in which it appears; nothing limits its application to only the first portion of that sentence. The statute does not merely require the State to present evidence that the defendant knowingly exposed his genitals to a child less than 14 years old. To the contrary, this single sentence requires the State to show that defendant knowingly exposed his genitals to a person under 14 in a manner that would cause a reasonable adult to believe that the conduct was likely to cause affront or alarm to a child of less than 14 years. If the person does not knowingly act in this manner, he has not violated the statute.

As so construed, section 566.083.1 is not unconstitutionally vague. As this Court has previously recognized, "impossible standards of specificity are not required." *State v. Brown,* 660 S.W.2d 694, 697 (Mo. banc 1983):

> If the terms or words used in the statute are of common usage and are understandable by persons of ordinary intelligence, they satisfy the constitutional requirements as to definiteness and certainty.

*Id.* Mr. Beine suggests that even if the statute requires that he act knowingly, the word "knowingly" is itself vague. But:

> A person acts knowingly '(1) With respect to his conduct or to attendant circumstances when he is aware of the

nature of his conduct or that those circumstances exist; or (2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.'

*Mahurin,* 799 S.W.2d at 844, *quoting,* sec. 562.016.3. *Moore* applied this definition, holding that in determining whether a defendant acted "knowingly", a court looks at how the person would expect the recipient of the sexual solicitation to feel as a result of the comment. *Moore,* 90 S.W.3d at 68. *Moore* held that the adult in that case could be held to know that solicitation of a child to perform a criminal sexual act was likely to cause affront or alarm. *Id.*

*Moore* also rejected a contention, similar to the one now made by Mr. Beine, that the phrase "likely to cause affront or alarm" is vague, stating:

> In the context in which 'affront' and 'alarm' are used in section 566.095, what is prohibited are sexual requests or solicitations that the defendant knows are likely to cause such a reaction. To be impolite is not enough. To be annoying is insufficient. The words 'affront or alarm' convey, respectively, a deliberate offense or a feeling of danger. At the least, real emotional turmoil must result.

90 S.W.3d at 67. *Moore* further described the conduct of exposing one's genitals to a child as "inherently criminal behavior." *Id.* at 68 at n. 8.

Applying these principles here, the statute is not unconstitutionally vague in making it criminal for a defendant to knowingly expose his genitals to a child less than 14 in a manner that would cause a reasonable adult to believe that the conduct is likely to cause affront or alarm to a child less than 14 years of age. The statute informed Mr. Beine that he cannot expose himself in a manner that he knows is likely to cause deliberate offense or a feeling of

danger. Mr. Beine's vagueness challenge is rejected.

Mr. Beine also argues that the statute is overbroad. As the principal opinion concedes, an overbreadth argument is normally cognizable only where a person claims First Amendment free speech rights are infringed or chilled. *See, e.g., Artman v. State Bd. Of Registration for the Healing Arts,* 918 S.W.2d 247, 251 (Mo. banc 1996). Here, unlike in *Moore,* 90 S.W.3d at 66–67, the statute at issue criminalizes conduct, not speech, and Mr. Beine admits he was not attempting to communicate to the boys when acting in the manner alleged; to the contrary, he denied any intent to cause them affront or alarm or knowledge that his conduct might do so. The principal opinion nonetheless finds constitutional concerns in the statute because it construes the statute to criminalize unknowing behavior based solely on the reactions of others. As discussed in detail above, this construction of the statute is incorrect. The statute criminalizes only knowingly exposing ones genitals to a child in a manner that the defendant knows a reasonable adult would believe was likely to cause affront or alarm to the child. It does not chill protected conduct.

## III. SUFFICIENCY OF THE EVIDENCE

Mr. Beine also argues that, even if this Court rejects his constitutional challenge, the evidence was not sufficient to support his convictions. He did not contest that he knowingly exposed his genitals in the course of urinating or that he knew the children were less than 14 years of age. But, he argues the record does not support a finding that he knew his conduct would affront or alarm the boys or that a reasonable person would believe that his conduct would do so, and there was no evidence that it did.

It should be noted preliminarily that the statute does not require the State to show that these particular boys were actually affronted or alarmed, only that a defendant knowingly acted in a manner that he knew would cause a reasonable adult to believe his conduct was likely to affront or alarm a child of less than 14 years of age. *See* sec. 566.083.1. Of course, this does not make proof whether a particular child showed affront or alarm irrelevant; it merely is not dispositive.[3]

In reviewing a claim that the evidence was not sufficient to support the verdict, this Court is limited to determining whether the evidence was sufficient for a reasonable juror to find each element of the crime beyond a reasonable doubt. *State v. O'Brien,* 857 S.W.2d 212, 215 (Mo. banc 1993). All the evidence is considered in the light most favorable to the verdict. *Id.* "Evidence that supports a finding of guilt is taken as true and all logical inferences that support a finding of guilt and that may reasonably be drawn from the evidence are indulged. Conversely, the evidence and any inferences to be drawn therefrom that do not support a finding of guilt are ignored." *Id.* at 216.

### A. Testimony of Mr. Beine's Jailhouse Admissions to Another Inmate.

After Mr. Beine's arrest for allegedly exposing himself to C.M., J.M., and K.L., he was incarcerated in the Madison Coun-

---

**3.** No argument is made that the incident involving K.L. and C.M., although involving two children, involved only a single act by Mr. Beine and, thus, can be the basis for only a single conviction where, as here, the statute bases guilt not on harm to the victim but rather on the intent with which defendant engaged in certain conduct before minors. Mr. Beine only engaged in that conduct once on each occasion. The propriety of imposing two separate convictions for this conduct is thus not addressed further.

ty jail with a person named William Longwell. Mr. Longwell was called by the State as a witness against Mr. Beine. Mr. Longwell testified that he ran a Bible study class in the jail, that Mr. Beine asked to sit in on the class, and that after awhile:

A. We started talking about the Bible a little bit, some of the meanings to us, and that's when he had made a statement that got us into a conversation.

Q. And was this a conversation that concerned why he was incarcerated, why he was locked up?

A. Yeah.

Q. ... What was the statement he made that led into this?

A. We were talking about a Bible scripture. He seemed to be—start getting a little upset. *He said that God had put him in jail as a punishment because he said that he referred to himself as—he was like the serpent in the Bible that crawls through the grass, instead in his case the grass was like little kids.*

(emphasis added). The court overruled an objection by defense counsel that the above testimony went beyond what he had anticipated, which was that Mr. Longwell would testify that "he said he had exposed himself to two boys that are brothers, at one time with one other kid, nothing about this other stuff." The testimony continued:

Q. After Mr. Beine made this statement to you, did you then ask him basically about what that meant, and specifically, concerning why he was locked up?

A. Yeah. I asked him why he would say something like that. I said, 'why would they say something like that? What they have you on, a lot of

charges or something? And he said 'yeah.'

. . . .

A. ... he said that there was some brothers, two young brothers, that could possibly testify against him. He wasn't sure and [it] had made him nervous.

I said, 'well, evidently they have something to testify about.' He asked me, he goes, 'well, you have been locked up a couple of times.' I said 'yeah,' and he said 'well, you know a little bit about the law,' he said 'let me explain it to you, you tell me what you think.' So we got to talking.

He said he was a counselor that worked in a school in Missouri. I don't know what school, a school in Missouri. And that he was a counselor there, and that there was two young boys there ages about six and seven, I believe, somewhere in that area at the time, that was a couple years ago. He said that the normal procedure there was these couple young kids stuck out to him and he was drawn to them for whatever reason.

Q. He said he was drawn to them?

A. He said he was drawn to them for whatever reason, these two young kids.

Mr. Longwell then continued his testimony, stating that Mr. Beine had confessed that he knowingly exposed himself to two young boys:

Q. Then what did he say?

A. ... And he said that on a couple of instances he was the one that was to watch them go in and watch them come out, and he said these two particular young boys, whenever they would go in there if another adult wasn't around to see, then he said he

would go in there while they using the bathroom and he said he exposed himself to them. And I said 'you exposed yourself to them' and he flat out—he flat out said, he said 'I showed my penis to them. I think—I don't know whether or not they are going to testify.'

Q. Did he tell you their names?

A. Only thing he said, he said he didn't believe it would have been very much trouble started if it wasn't for Mrs. B . . ., I believe, and I said 'who is this' and he said that was the kid's mother.

It is against the backdrop of this testimony, which the jury was free to believe despite Mr. Beine's attempts to impeach it, that this Court should consider the evidence that Mr. Beine violated section 566.083.1.

*B. Knowing Exposure to C.M. and K.L. While Urinating.*

Sometime in the spring of 2001, K.L., who was ten years old and in the fourth grade, and C.M., who was nine years old and in the fourth grade, were in the boy's bathroom on the ground floor next to the gymnasium. They were both using the urinals when Mr. Beine entered the bathroom. C.M. testified that other than one time when the principal was in the bathroom, the only adult who entered the bathroom when the boys were using it was "Dr. James," as the boys referred to Mr. Beine. C.M. said that Mr. Beine was in the bathroom almost any time his class used it.

On the occasions in question, although enclosed toilet stalls were available and there was a unisex bathroom just down the hall for faculty and staff, Mr. Beine began to use an open urinal. As C.M. described

the incident involving himself and K.L., he was in the bathroom when Dr. James came in, unzipped his pants, and proceeded to urinate right next to C.M. He did so while standing 3 or 4 feet away from the urinal and urinating in an arc.[4] When this occurred, C.M. could see Mr. Beine's "private part" and the stream of urine he aimed at the urinal, and it made C.M. feel "uncomfortable." He further said:

Q: How did that make you feel when Doctor James was in the bathroom when you were using it?

A. Scared.

Q. Why was that?

A. Because he look at us use the urinal and stuff.

. . . .

A. Yes. He would watch us use it.

Q. He would look at you using it.

A. Yes.

Q. And did that make you feel funny?

A. Yes.

C.M. said Mr. Beine acted similarly on another occasion, coming in the bathroom while C.M. was using it alone and urinating in an arc from a spot some distance from the urinal. C.M. testified that he could see Mr. Beine's penis when he urinated in this manner.

K.L. similarly testified as to the first incident:

Q. Okay. So, he was actually peeing when you saw him do it.

A. Yes, sir.

Q. Okay. Could you see the stream of pee going to the urinal?

A. Yes, sir.

Q. Okay. What did you do when you saw this?

---

4. K.L. said Mr. Beine was four to five feet away from the urinal, and C.M. testified that

Mr. Beine was three to four feet away.

A. I left.

Q. How did it make you feel when you saw Doctor James doing that?

A. Embarrassed.

Q. And had you seen anything like that before?

A. No, sir.

Q. Okay. Could you actually see his private part?

A. When I was leaving.

Q. Okay. And is that while he was peeing?

A. Yes, sir.

. . . .

Q. And did you ever go into the bathroom again while Doctor James was in there?

A. No.

Both children said they immediately disclosed these incidents to their teacher and later to their mothers. C.M. and K.L.'s teacher told the principal that her students were uncomfortable with Mr. Beine in the restroom. The mother of C.M. and J.M. complained to the school district and met with the associate superintendent as well as several others to discuss her concerns that adults were permitted to use the bathroom at the same time as students. When the principal refused to fire Mr. Beine or keep him away from her sons, C.M. and J.M.'s mother took her two sons out of the school a few weeks before the year ended and enrolled them elsewhere so they would not be near Mr. Beine.

This evidence, when considered in combination with Mr. Longwell's testimony, was sufficient for a reasonable juror to find that Mr. Beine knowingly exposed his genitals to children under 14 years of age in a manner that would cause a reasonable adult to believe that the conduct was likely to cause the children affront or alarm. Mr. Beine was in a position of authority, and the children were not accustomed to any adult being in the bathroom when they were present. A reasonable person would believe that an adult with authority over children, who entered the bathroom while the children were using it, and who urinated in the fashion Mr. Beine did in front of children, showing his penis to them, would find that conduct likely to cause affront or alarm to a child less than 14 years of age. That is sufficient to support a conviction under the statute.

C. *Evidence as to J.M.*

The evidence is not sufficient to affirm the judgment as to the count involving J.M. That count alleged that on another occasion in the spring of 2001, Mr. Beine went into the boys' bathroom near the gymnasium and began using the urinal. So far as the record shows, no child was in the room when Mr. Beine was first there. However, J.M., who was in the third grade and is the younger brother of C.M., entered the boys' bathroom as Mr. Beine was urinating. J.M. used a urinal and finished before Mr. Beine and went to wash his hands at the sinks. As J.M. was washing his hands, some other boys entered the room and began to argue loudly. Mr. Beine, who had still been using the urinal, turned around and told the disruptive boys to "shut up." His pants were still unzipped as he did so, and J.M. says he saw Mr. Beine's penis:

A. So, other kids come in, they're talking real loud, I guess he told them to shut up. He turned around, his hands were like this, and then he hurried up and zipped up his pants.

. . . .

Q. Now what did you say was the deal with his zipper?

A. It was still down and then he hurried up and zipped it back up.

Q. When you say it was still down, could you see anything.

A. Yes.

Q. What could you see?

A. His private part.

. . . .

Q. All right. So was that—you could see it?

A. Yes.

Q. Okay. You said it was hanging out of his pants?

A. Then he hurried up and zipped it back up.

Q. What did you do when that happened?

A. I just turned around.

Q. What did you think when you saw that?

A. I don't know.

Q. How did it make you feel?

A. Disgust.

. . . .

Q. Okay. Now, did you want to go to the bathroom when Dr. James was in there?

A. No.

Q. Why not?

A. Because I just didn't know if he was going to do it again, that's all.

On cross-examination, J.M. further clarified that Mr. Beine said "shut up" to the loud boys as he turned around toward the sink, and:

Q. He turned around towards you, at that time you saw his penis, is that what you're telling us?

A. Yes.

Q. He was flipping up his fly at the same time, is that right?

A. Yes.

On redirect J.M. then said:

Q. Were you mad at him?

A. Yeah. I didn't use the word—I used the word "upset."

Q. Why were you upset?

A. Because he—he turn around and say 'shut up.'

Q. What about showing you his private part, did that upset you?

A. Yeah.

While J.M.'s testimony is sufficient to show that Mr. Beine exposed his penis to J.M., it is not sufficient to show that he knowingly did so in a manner that a reasonable adult would believe would more likely than not cause affront or alarm to a child of less than 14. As *Moore* stated, "To be impolite is not enough. To be annoying is insufficient. The words 'affront or alarm' convey, respectively, a deliberate offense or a feeling of danger. At the least, real emotional turmoil must result." 90 S.W.3d at 67.

Here, there is no showing of deliberate offense, a feeling of danger, or real emotional turmoil. The evidence shows that the whole incident occurred very quickly. Mr. Beine was already in the bathroom when J.M. and the other boys entered. The principal said that on occasion an adult might use one of the boys' rooms if no one was in it at the time. He did not flaunt himself as he had on the other occasions involved in this appeal, and J.M. did not see his penis while he was urinating. While J.M. did see Mr. Beine's penis, he did so only briefly as Mr. Beine was hurriedly zipping up his pants after turning around from the urinal and yelling at the other boys to "shut up." Nothing suggests that he particularly focused on J.M. or purposely exposed himself to J.M. or to any of the other boys. J.M. said he was disgusted, but from the testimony this appears in large part to be because he had been told to shut up. J.M. did not indicate whether any of the other boys saw Mr. Beine's penis or complained about it. No charges were brought based on alleged exposure by Mr. Beine to the other boys,

although a large group of them were in the bathroom at the time. While Mr. Beine's admissions to Mr. Longwell could support a finding that he exposed himself to J.M. on some occasion, it does not support knowingly doing so on this occasion.

### D. Other Contentions.

Mr. Beine raises a number of related issues concerning trial publicity and regarding the admission of evidence that the State argued shows an attempt to evade arrest by hiding in a closet of his house as the police pounded on the door and called repeatedly over many hours before finally obtaining a warrant and finding him hiding in the closet. Because the principal opinion finds the evidence insufficient, there will not be a retrial; thus, there is no reason to address these or the other evidentiary issues raised by Mr. Beine. Similarly, there is no point in addressing the failure of defendant to object to the fact that the instructions failed to submit the requirement that Mr. Beine act knowingly.