STATE of Missouri, Respondent,

v.

John BURGIN, Appellant.

No. ED 86200.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 16, 2006.

Case Transferred to Supreme Court
July 5, 2006.

Case Retransferred to Court of
Appeals Oct. 31, 2006.

Original Opinion Reinstated
Nov. 9, 2006.

Kent Denzel, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Jefferson City, MO, for respondent.

Before NANNETTE A. BAKER, P.J., ROBERT G. DOWD, JR., J., and SHERRI B. SULLIVAN, J.

PER CURIAM.

### Introduction

John Burgin ("Burgin") appeals from a judgment after a jury found him guilty of two counts of sexual misconduct involving a child in violation of Section 566.083.1(1).[1] The trial court sentenced Burgin to two concurrent terms of four years' imprisonment.

Burgin raises two points on appeal. First, Burgin claims that the trial court plainly erred in entering a judgment and conviction under Section 566.083.1(1) because the statute was invalidated by the Missouri Supreme Court shortly after his conviction. Second, he claims that the trial court abused its discretion by allowing witnesses to give improper or speculative opinions as part of their testimony. We reverse.

### Factual Background and Proceedings Below

The evidence presented at trial viewed in the light most favorable to the verdict is as follows:

On November 5, 2003, six-year-old D.H. and three-year-old C.H. had a regular overnight visitation with their mother ("Mother"). Mother lived in a two-bedroom apartment. D.H. and C.H. shared one bedroom, which had a television in it. Another television and a Nintendo video game system were in the living room.

Burgin, Mother's boyfriend, also spent the night in her apartment. Mother had

---

1. All statutory references are to RSMo.2000, unless otherwise indicated.

been dating Burgin for four or five months. Mother testified that the boys knew Burgin.

After D.H. and C.H. arrived at her apartment, Mother ordered pizza for the children and Burgin. She then left D.H. and C.H. in Burgin's care while she ran errands. While Mother was gone, D.H. and C.H. watched a movie and ate pizza in their room. They also wrestled with Burgin in the living room. At some point, Burgin told them he "wanted to show them something." He exposed his penis, rubbed it, and asked D.H. and C.H. to touch it. D.H. testified that he thought it was "gross" and ran into the bathroom.

D.H., C.H. and Burgin were asleep when Mother returned. Burgin woke up early the next morning, chatted with Mother and left for work while the boys were still sleeping. He did not tell Mother about what happened the night before. When the boys awoke, Mother gave them breakfast and talked with them. After breakfast, she drove the boys to their father's ("Father") house. Neither D.H. nor C.H. told Mother what Burgin did the night before.

After D.H. arrived at his Father's house, he told his babysitter that his friend John, "who sometimes lived with his mother," "had a big wee-wee that grew when he pulled on it." The babysitter immediately called Father. Father notified Mother. Both Father and Mother talked to D.H. and felt confident that he was telling the truth. Father and Mother took D.H. to the police, where he told Detective Michael Rimiller what happened. Father and Mother also made statements. The police also questioned Burgin. Burgin made a statement to the police that included assertions that D.H. hit him in the groin after he told D.H. he could not play Nintendo in the living room, that he was in the bathroom checking himself for injuries, that the bathroom door did not close all the way, that D.H. kicked the bathroom door open, and that D.H. only saw his exposed penis while he was in the bathroom checking himself for injuries after being hit.

Burgin was indicted on January 28, 2004 for two counts of sexual misconduct involving a child as defined by Section 566.083.1(1); one count for exposing himself to D.H. and one count for exposing himself to C.H. A jury found him guilty on February 24, 2005. On April 18, 2005, the trial court sentenced Burgin to two concurrent four-year terms. Burgin filed his notice of appeal on April 22, 2005. Four days later, on April 26, 2005, the Missouri Supreme Court handed down *State v. Beine*, which invalidated Section 566.083.1(1). 162 S.W.3d 483 (Mo. banc 2005). Burgin now appeals his conviction.

### Standard of Review

Burgin concedes that his appeal is subject to plain error review. Rule 30.20 [2] provides, in pertinent part, that plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted. The plain error rule does not justify a review of every alleged trial error that has not been properly preserved for appellate review. *State v. Jamison*, 163 S.W.3d 552, 560 (Mo.App. E.D.2005). Rather, the plain error rule should be used sparingly. *Id.* It is limited to cases where the alleged trial court error would result in manifest injustice or a miscarriage of justice if not corrected. *Id.* "Plain" error for purposes of Rule 30.20 is an error that is evident, obvious and clear. *State v. Johnson*, 150 S.W.3d 132, 136 (Mo.App. E.D.2004). Whether plain error exists will be decided

2. All rule references are to Mo. Rules Crim. P.2004, unless otherwise indicated.

by the facts and circumstances of each case. *Id.*

A request for plain error review triggers the commencement of a two-step analysis by an appellate court. *State v. Stewart,* 113 S.W.3d 245, 248 (Mo.App. E.D.2003). The first step of this analysis is to determine whether the asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. *Id.* If facially substantial grounds are found to exist, the appellate court should then move to the second step of this analysis and engage in plain error review to determine whether manifest injustice or a miscarriage of justice has actually occurred. *Stewart,* 113 S.W.3d at 248. If facially substantial grounds are not found, the appellate court will decline to exercise its discretion to review the claim of plain error. *Johnson,* 150 S.W.3d at 136.

### *Discussion*

The State argues that Burgin waived his right to raise a constitutional challenge to Section 566.083.1(1) because he did not raise the issue during trial. Burgin, however, is not raising a constitutional challenge. Rather, he challenges his conviction under Section 566.0831(1), which was invalidated by the Missouri Supreme Court in *Beine* shortly after Burgin was convicted. 162 S.W.3d at 486–488. A conviction under an unconstitutional statute is void. *Ex Parte Smith,* 135 Mo. 223, 36 S.W. 628, 629 (1896). Burgin's conviction under a statute which was later invalidated by *Beine* facially establishes grounds for believing manifest injustice has occurred.

Accordingly, plain error review is appropriate.

When Burgin was indicted in January 2004, Section 566.083.1(1) defined the crime of sexual misconduct involving a child as "knowingly exposing [one's] genitals to a child less than fourteen years of age in a manner that would cause a reasonable adult to believe that the conduct is likely to cause affront or alarm to a child less than fourteen years of age." He was convicted and sentenced under this statute. Following his conviction, the Missouri Supreme Court handed down *State v. Beine,* which invalidated Section 566.083.1(1). *Beine,* 162 S.W.3d at 486. The Legislature has since revised Section 566.083.1(1).[3]

The *Beine* court explained the existing statute had two distinct elements: (1) knowingly exposing one's genitals to a child less than fourteen years of age and (2) exposing one's genitals in a manner that would lead a reasonable adult to believe the conduct would cause affront or alarm to a child less than fourteen years of age. *Beine,* 162 S.W.3d at 486. The court held that the requirement of knowing conduct did not extend to the second element. *Id.*

In *Beine,* the defendant, a grade school counselor, was using a school restroom, also used by students, when three children under fourteen saw his genitals. *Id.* When discussing whether the defendant "knowingly exposed his genitals," the *Beine* court took notice that the defendant was required to expose his genitals while using the school restroom. *Id.* at 487. The court held there was insufficient evidence to show that the defendant exposed his

---

**3.** RSMo 2004 (Supp.2006). The statute now reads as follows:

A person commits the crime of sexual misconduct involving a child if the person: knowingly exposes his or her genitals to a

child less than fourteen years of age under circumstances in which he or she knows that his or her conduct is likely to cause affront of alarm to the child. *Id.*

genitals in a manner which would cause a reasonable adult to believe the conduct would cause affront or alarm to a child. *Id.* at 486. The court decided that the State did not prove criminal conduct under the statute. *Id.* The *Beine* court held Section 566.083.1(1) was overbroad because it prohibited innocent as well as criminal conduct. *Id.* at 487–88. The court did not narrow its discussion to the facts set forth in the *Beine* case. Instead it made a broad statement that Section 566.083.1(1) was "patently unconstitutional" as it was written. *Id.* at 486.

 If there is a change of law after judgment is rendered by the trial court, but before the appellate court's decision, "the law must be obeyed or its obligation denied." *Sumners v. Sumners,* 701 S.W.2d 720, 723 (Mo. banc 1985). This court is constitutionally bound to follow the most recent controlling decision of the Missouri Supreme Court. *State v. Williams,* 904 S.W.2d 103, 106 (Mo.App. E.D.1995). Therefore, even though *Beine* was decided eight days after Burgin's conviction, it properly applies to this case.

The State argues that the *Beine* court's discussion of the overbreadth doctrine as related to Section 566.083.1(1) is not binding on this court because it is *obiter dictum.* Obiter dictum is "a judicial comment made while delivering a judicial opinion, but one that is not necessary to the decision in the case." BLACK' S LAW DICTIONARY 1102 (8th ed.2004). It is "[o]ften shortened to *dictum.*" *Id. Obiter dictum* is not binding on lower courts. *Anderson v. Hostetter,* 346 Mo. 249, 140 S.W.2d 21, 24 (banc 1940).

Alternatively, the State argues that the overbreadth discussion in *Beine* is an advisory opinion. An advisory opinion is a "nonbinding statement by a court of its interpretation of the law on a matter submitted for that purpose." BLACK' S LAW DICTIONARY 1125 (8th ed.2004). Advisory opinions have been described as those which are based on hypothetical situations and are not necessary for the resolution of the case before the court. *State v. Self,* 155 S.W.3d 756, 761 (Mo. banc 2005).

 The State claims the constitutional discussion in *Beine* was *dictum* and not necessary because it followed the resolution of an evidentiary issue which disposed of the case. Simply because the constitutional issue was discussed "also" does not make it *dictum.* As a general rule, the Missouri Supreme Court will not address a constitutional question if the case can be "fully determined without reaching it." *State v. Eisenhouer,* 40 S.W.3d 916, 919 (Mo. banc 2001). In other words, if the court addresses a constitutional question, that means the case could not be fully determined without reaching that question. Therefore, addressing the constitutional question was necessary to the *Beine* decision. Furthermore, the *Beine* court did not limit the constitutional discussion to the facts of the case or a hypothetical situation. The statement that Section 566.083.1(1) was "patently unconstitutional" was neither *obiter dictum* nor an advisory opinion. Therefore, the constitutional discussion in *Beine* is binding precedent.

 The *Beine* court clearly held that Section 566.083.1(1) was unconstitutional, and we must follow this precedent. "[A]n unconstitutional law is no law ... and therefore the trial court has no jurisdiction, because its jurisdiction extends only to such matters as the law declares to be criminal; if there is no law ... if that law is unconstitutional ... then the court transcends its jurisdiction and [the defendant] is entitled to his discharge." *Smith,* 36 S.W. at 630. In other words, a statute which is found to be unconstitutional is void. *Id.* "A conviction under an unconsti-

tutional law is not merely erroneous, but it is illegal and void, and cannot be the legal cause of imprisonment." *Id.* In this case, a manifest injustice actually occurred. Burgin was convicted under a statute that was later invalidated. His incarceration under an invalid statute cannot be upheld.

On his second point on appeal, Burgin claims that the trial court abused its discretion by allowing witnesses to give improper or speculative opinions as part of their testimony. It is unnecessary to discuss this issue because we have already decided Burgin's conviction under an invalid statute cannot be upheld.

We hereby reverse his conviction.