STATE of Missouri, Plaintiff–
Respondent,

v.

Victor R. JEFFRIES, Defendant–
Appellant.

No. SD 28958.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 10, 2008.

Kent Denzel, Columbia, for Appellant.

Marvin W. Opie, Versailles, for Respondent.

NANCY STEFFEN RAHMEYER,
Judge.

Victor R. Jeffries ("Appellant") was tried to a jury on two charges, the first was first-degree child molestation and the second was second-degree sexual misconduct. Count 1 was based on a violation of section 566.067.1,[1] which states "[a] person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact." Section 566.067.1. Count 2 was based on a violation of section 566.093.1, which states in part, "[a] person commits the crime of sexual misconduct in the second degree if such person (1)[e]xposes his or her genitals under circumstances in which he or she knows that his or her conduct is likely to cause affront or alarm[.]" Section 566.093.1. The jury found Appellant guilty on Count 2, but not guilty on Count 1. Appellant files this appeal from the trial court's denial of his motion for acquittal at the close of all evidence.

## Standard of Review

We review the denial of a motion for judgment of acquittal to determine if the State made a submissible case by introducing sufficient evidence. *State v. Sensabaugh*, 9 S.W.3d 677, 679 (Mo.App. E.D. 1999). The State makes a submissible case if a reasonable juror could find each element of the crime beyond a reasonable doubt. *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993). When reviewing the suf-

1. All references to statutes are to RSMo 2000,   unless otherwise specified.

ficiency of the State's evidence, we accept the truth of all favorable evidence and inferences and disregard all contrary evidence and inferences. *Sensabaugh,* 9 S.W.3d at 679. Our function is "to assure that the jury, in finding the facts, does not do so based on sheer speculation," not to decide disputed facts. *Grim,* 854 S.W.2d at 414.

## Statement of Facts

Twelve-year-old C.G. lived with her mother, but occasionally visited her father, who lived across the street from Appellant. C.G. described him as "my friend and my dad's friend." On August 28, 2005, C.G. went to Appellant's house to look at his Schnauzer puppies. Later that night, C.G. went with Appellant and Teresa King, Appellant's then-girlfriend, to the Lake Ozark Speedway to watch the races. C.G. testified that Appellant told her that she "might as well stay the night" because she was going to the races.

After the races, C.G. returned to Appellant's house and went to sleep on the living room floor. Appellant and Teresa went to sleep in the bedroom. C.G. testified she was asleep on her side and woke up to find Appellant lying right behind her. He was rubbing his "thing"[2] on her back, and she noticed her shirt was raised up a little bit. She saw his "thing" again when she got up to go to the bathroom. Appellant then went back into the bedroom.

In the bathroom, she tried to think for a minute and went to the mirror to wipe her mouth off. There was white stuff on her mouth that she had never seen before. When she exited the bathroom, Appellant exited the bedroom. She returned to the living room and found Appellant lying on the couch. He began watching a movie and talking to C.G. "with his wee-wee

hanging out," up over his shorts. Appellant asked C.G. if she was going to tell Teresa. C.G. interpreted this question to be in reference to Appellant's actions. She said, "No." Appellant proceeded to watch the movie. C.G. was shaking and scared and tried to wipe off the white stuff onto the couch. After the movie, Appellant went back in the bedroom with Teresa.

## Discussion

Appellant claims his conviction should be overturned because the State did not prove that he knew any of his actions would cause affront or alarm. To determine whether or not the State presented sufficient evidence that Appellant knew his actions would cause affront or alarm, we must first define "affront" and "alarm." Several cases involving other statutes regulating sexual conduct have defined "affront" and "alarm." We note that "[s]tatutes relating to the same subject matter should be construed consistently with one another." *Reed v. Director of Revenue,* 184 S.W.3d 564, 567 (Mo. banc 2006).

In *State v. Moore,* 90 S.W.3d 64 (Mo. banc 2002), defendant was charged with soliciting oral sex from a 13–year–old girl. *Id.* at 66. Defendant was charged under section 566.095, which stated in part, "1. A person commits the crime of sexual misconduct in the third degree if he solicits or requests another person to engage in sexual conduct under circumstances in which he knows that his requests or solicitation is likely to cause affront or alarm." *Id.* at 67. The court noted that " '[a]ffront' is defined as 'a deliberately offensive act or utterance; an offense to one's self-respect.' WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 36 (1993). 'Alarm' is defined as 'apprehension of an unfavorable outcome, of failure, or danger-

---

**2.** She testified her use of the word "thing" was a reference to Appellant's "private part."

ous consequences; an occasion of excitement or apprehension.' *Id.* at 48." *Id.* at 67 n. 6. To interpret the meaning of section 566.095, the court analyzed the language of section 566.093 and stated that section 566.093 "prohibit[s] conduct that is known or believed 'likely to cause affront or alarm,' presumably to distinguish a criminal act of exposing oneself from conduct that is accidental, inadvertent, or otherwise done without an intent to do harm." *Id.* at 68. As the court noted:

> In the context in which "affront" and "alarm" are used in section 566.095, what is prohibited are sexual requests or solicitations that the defendant knows are likely to cause such a reaction. To be impolite is not enough. To be annoying is insufficient. The words "affront or alarm" convey, respectively, a deliberate offense or a feeling of danger. At the least, real emotional turmoil must result.

*Id.* at 67. Thus, the conduct of a 61–year–old discussing oral sex with a 13–year–old was affirmed as likely to cause affront or alarm. *Id.* at 69.

In *State v. Beine*, 162 S.W.3d 483 (Mo. banc 2005), Defendant was charged under section 566.083.1(1) with sexual misconduct involving a child. *Id.* at 484. The statute states in pertinent part:

> A person commits the crime of sexual misconduct involving a child if the person: (1) Knowingly exposes the person's genitals to a child less than fourteen years of age in a manner that would cause a reasonable adult to believe that the conduct is likely to cause affront or alarm to a child less than fourteen years of age.

*Id.* at 484–85. Defendant was a counselor at an elementary school; he was required "to prevent disruptive behavior by students in the school's halls and restrooms." *Id.* Three male students accused Defendant of exposing himself to them in a school restroom. *Id.* On one occasion, two male students testified that Defendant used the urinal next to them and "stood 3 or 4 feet from the urinal and urinated into it in an arc." *Id.* On another occasion, a third male student testified that Defendant was using the urinal when a group of boys "began causing a ruckus." *Id.* Defendant exposed his penis when he quickly turned to tell the boys to "shut up." *Id.* Defendant, however, "quickly turned back and zipped up his pants before proceeding to prevent the restroom disturbance." *Id.*

The court stated that Defendant was not prohibited from using the restroom while on duty. *Id.* at 485. The court further stated that it is common for men and boys to use public restrooms at the same time. *Id.*

> In so doing, it is necessary for the users to expose their private parts.... The evidence that on two occasions [Defendant] stood at a distance from the urinal and urinated in an arc in the presence of the boys cannot be construed as likely to cause affront or alarm.

*Id.* The court cited Moore with approval for the definitions of affront and alarm. *Id.* at 486. The court noted "'[a]ffront' might connote an exhibition by a man of his genitalia to a woman or girl." *Id.* (emphasis added). The court held the State had not proven criminal conduct and reversed the conviction. *Id.*

Section 566.093.1(1), likewise, states in part "under circumstances in which he or she knows that his or her conduct is likely to cause affront or alarm." The focus then is on Appellant's knowledge that his behaviors would cause affront or alarm. This does not require the State to prove that C.G. was in fact affronted or alarmed, only that Appellant knew that his conduct was likely to cause affront or alarm.

886

In this case, the State presented evidence that C.G. saw Appellant's private part when she woke up and went to the bathroom. The State presented further evidence that Appellant watched a movie and talked to C.G. "with his wee-wee hanging out." Based on *Moore*, Appellant's conduct would not be criminal if his conduct was accidental, inadvertent, or otherwise done without intent to do harm. The court in *Beine* left the door open to a situation such as this when it noted that " '[a]ffront' might connote an exhibition by a man of his genitalia to a woman or girl." Appellant's conduct does not fit into accidental, inadvertent conduct. There was no necessary reason for Appellant's exposure to a 12–year–old girl in the middle of the night. The conduct occurred while Appellant was alone with C.G., and it was not done in a setting where his conduct might be considered common. Additionally, the jury could have reasonably considered that Appellant knew his conduct would cause affront or alarm because he asked C.G. if she was going to tell Teresa what happened. There was sufficient evidence that a reasonable jury could find Appellant guilty of second-degree sexual misconduct beyond a reasonable doubt.

The judgment is affirmed.

LYNCH, C.J., PARRISH, J., concur.